(8 App. Div. 127)

BAILEY v̇. INTERSTATE CASUALTY CO. OF NEW YORK.

(Supreme Court, Appellate Division, Third Department.   July 7, 1896.)

ACCIDENT INSURANCE—CAUSE OF INJURY—QUESTION FOR JURY.
  It is a question for the jury whether plaintiff's injury was caused by
external, violent, and accidental means, within the meaning of an acci-
dent policy, where it was the result of inflammation caused by the use of
a hypodermic needle with which plaintiff was administering medicine to
himself for extreme exhaustion, and his attending physician testified that
he did not think the medicine injected by plaintiff caused the inflamma-
tion, but that it was caused by the puncture. Parker, P. J., and Landon,
J., dissenting.

  Appeal from circuit court, Essex county.

  Action by James H. Bailey against the Interstate Casualty Com-
pany of New York to recover $487.50 on an accident insurance policy.
The complaint was dismissed on the merits, and plaintiff appeals.
Reversed.

  Argued before PARKER, P. J., and LANDON, HERRICK, PUT-
NAM, and MERWIN, JJ.

  F. A. Rowe, for appellant.
  Vanderpoel, Cuming & Goodwin, for respondent.

  MERWIN, J.   This action is brought to recover weekly indemni-
ties to the amount of $487.50 under a policy issued by the defend-
ant to the plaintiff on the 28th April, 1894, by which the defendant
insured the plaintiff, for the term of 12 months, "against bodily in-
juries sustained through external, violent, and accidental means."
In the complaint it is alleged that on the 6th of November, 1894,
the plaintiff sustained bodily injuries, through external, violent,
and accidental means, by reason whereof, independently of all other
causes, he was disabled for the period of 22 weeks; that the plaintiff
is a physician and surgeon, and at the date stated, while he was in
his carriage in the highway between the towns of Hague and Ticon-
deroga, and administering to himself, in his leg, for extreme ex-
haustion, medicine with a hypodermic needle, his carriage suddenly
started, by reason whereof he accidentally inserted the needle deeply
into his leg, causing an injury thereto, and on account of and by
means of which blood poisoning and suppuration immediately set
in, whereby the plaintiff was disabled as before stated.   Most of
the material allegations of the complaint were denied by the answer,
and it was averred that the injuries complained of were not occa-
sioned by any accident, within the terms of the policy.   It was also
set up, by way of further defense, that the injuries complained of
resulted from voluntary exposure to unnecessary danger, and result-
ed wholly or in part from poison accidentally or otherwise taken and
administered by plaintiff to himself, pursuant to a habit and prac-
tice of taking and administering such poison as a stimulant; also,
that the injuries resulted directly or indirectly from the use of an-
æsthetics or narcotics voluntarily administered by the plaintiff to
himself.   Upon the trial it appeared that in November, 1894, the
plaintiff was a practicing physician.   He testifies that he was not

robust, on account of an injury he had received a year or two be-
fore, which caused him a good deal of pain, and he was somewhat
emaciated, and, when he took long rides, became very much ex-
hausted; that on the 6th November he was on his way home from
Hague village, driving in a booted road cart, and the horse did not
like to stand very well; that he was very much exhausted, and had
no stimulant, and would either have to take a stimulant, or use mor-
phia, in order to get along and get home in any comfort; that he
thereupon dissolved a one-eighth grain tablet of morphia in anti-
septic water, and injected it into his leg with a hypodermic needle,
by inserting the needle into the skin, under the skin and the tissue
below; that the next day it was sore and a little inflamed, and after
that became worse, so that he was disabled for about 20 weeks;
that the difficulty was inflammation resulting from the puncture of
the hypodermic needle; that the effect he intended to produce by
taking the morphia was nothing but a slight stimulating effect, and
he did not take it at all for a narcotic effect; that he had probably
used the hypodermic needle 10,000 times in his practice, and had used
it before on himself; that doctors give it to subdue inflammation of
any kind, and to relieve pain or nervous exhaustion, and in medicinal
quantities, as used by him, it was not a poison; that he was sitting
still in his road cart when he took it; that he never knew of a case,
or saw a case reported, where morphia injected into a person's leg
acted as a poison upon the tissues, when injected with a hypodermic
needle, and that in his opinion the morphia did not cause the injury
which he sustained, and he attributed the poisoning of the blood and
the inflammation to the same cause as if he had received the prick·
of a pin or a blister; that he attributed the inflammation to the
use of the needle, and not the substance which the needle injected
into the veins; that he imagined there was nothing on the needle
that conveyed any blood poisoning; that there might have been
some peculiar condition of the system at that time; that erysipelas
inflammation is a possible cause that would produce the inflamma-
tion; that there was cellular tissue where he put the needle in, and,
from the horse starting, it may have possibly gone deeper, and in-
jured the tendon, or something of that sort; that, in all other cases
where he had administered it, he never had any trouble with the
after effect,—nothing more than a little superficial inflammation that
would last but 10 or 12 hours and pass away.    Dr. McLaughlin, who
attended the plaintiff during his illness, states that after a day or
two the limb became badly swollen and inflamed, and he recognized
it as a case of cellulitis; that after it progressed for five or six
days he opened the leg, and a large quantity of pus was discharged,
and after a week or so he made an incision from the knee to near
the ankle joint, and treated it for three or four months, and it was
a severe form of cellulitis; that in his judgment the morphia had
nothing whatever to do with the condition he found; that "the same
results would have occurred if the needle had been inserted with-
out anything in it, or even with water in it.    He did not think the
morphia had anything to do with it.    It was the wound.    It was
the introduction of the needle, together with some condition of the

skin or needle, that caused the inflammatory trouble.  He attrib-
uted the condition of the patient to the wound.  Either the needle
was not clean, or the skin was not."  At the close of plaintiff's evi-
dence a nonsuit was granted, the court being of the opinion that the
illness of the plaintiff was not in any sense an injury sustained
through external, violent, and accidental means;  and that is the
main question on this appeal.

The plaintiff claims that upon the evidence this question should
have been submitted to the jury.  The plaintiff voluntarily injected
the morphine, and if that caused the injury it could hardly be acci-
dental.  Upon the evidence, however, it might have been found that
the injury was in no way attributable to the morphine.  If not, then
the question would be whether the injury was attributable to the
introduction of the needle deeper than it was intended, and so an
irritation produced which induced the inflammation of the cellular
tissue, or whether, by reason of the needle or skin not being clean,
something was, in the act of puncturing, transferred to the wound
which induced the resulting condition.  The defendant says it was
not an accident, because the plaintiff voluntarily inserted the needle.
According to Webster, an accident is an event that takes place with-
out one's foresight or expectation;  an event which proceeds from
an unknown cause, or is an unusual effect of a known cause, and
therefore not expected.  In Association v. Barry, 131 U. S. 100,
9 Sup. Ct. 755, the party voluntarily jumped from a platform four or
five feet high to the ground, and it was alleged that the jar from
the jump produced a stricture of the duodenum, from the effects of
which death ensued.  The court, at page 121, 131 U. S., and page
762, 9 Sup. Ct., say:

"It must be presumed, not only that the deceased intended to alight safely,
but thought that he would.  The jury were, on all the evidence, at liberty
to say that it was an accident that he did not.  The court properly instructed
them that the jumping off the platform was the means by which the injury,
if any was sustained, was caused;  that the question was whether there was
anything accidental, unforeseen, involuntary, unexpected, in the act of jump-
ing, from the time deceased left the platform until he alighted on the ground;
that the term 'accidental' was used in the policy in its ordinary, popular sense,
as meaning 'happening by chance, unexpectedly taking place, not according
to the usual course of things, or not as expected';  that if a result is such as
follows from ordinary means, voluntarily employed, in a not unusual or un-
expected way, it cannot be called a result effected by accidental means, but
that if, in the act which precedes the injury, something unforeseen, unex-
pected, unusual occurs, which produces the injury, then the injury has re-
sulted through accidental means."

See, also, 2 May, Ins. (3d Ed.) § 514 et seq.;  Richards, Ins. § 190;
1 Am. & Eng. Enc. Law (2d Ed.) 315.

Within the rule laid down in the Barry Case, the jury might have
found in this case that the injury resulted through accidental means.

But the defendant says that the plaintiff's condition was a disease,
and not within the policy.  Under the head of "Conditions," in-
dorsed upon the back of the policy, there was a provision that the
insurance does not cover, among other things, injuries resulting di-
rectly or indirectly from any disease, bodily infirmity, deformity, or
defect.  No defense is set up, based on this condition, and ordi-

narily, therefore, it would not be available to the defendant. Coburn v. Insurance Co., 145 Mass. 226, 13 N. E. 604; 2 May, Ins. (3d Ed.) § 591; 1 Am. & Eng. Enc. Law (2d Ed.) 332, and cases cited. Assuming, however, that the question may be considered, can it be said, as matter of law, that the injury to plaintiff resulted from any disease? The case of Bacon v. Association, 123 N. Y. 304, 25 N. E. 399, is claimed by the defendant to be in point. The death of the insured in that case was caused by malignant pustule upon his lip. It did not appear how the deceased became infected with the animal virus that produced the result. The condition is caused by contact with putrid or diseased animal matter, and was shown to be an acute, infectious malady, sometimes epidemic, and it was likened to cases of smallpox, scarlet fever, and like diseases; the only difference being said to be that it is caused by different bacilli which come in contact with the skin, or enter into its pores, while in the other cases they are generally breathed in. No abrasion of the skin is necessary to effectuate the contact of the bacilli. The deceased was engaged in a business where he was exposed to the infection. It was held that the death was from disease, and not from an accident causing the disease, and that the disease itself was not caused by an accident, within the meaning of the policy. The Bacon Case is, I think, so materially different from the present case that it affords no support to the defendant's contention. On the contrary, it recognizes the idea that, if a condition in the nature of a disease is caused by an accident, it will not prevent recovery. In Martin v. Association, 61 Hun, 467, 16 N. Y. Supp. 279, it was held a question for the jury to determine, whether the accident was the proximate and sole cause of the death, although the immediate cause was blood poisoning, induced, as it might have been found, by inoculation attributable to the accident. In the Barry Case, supra, a charge of the trial court was approved which stated that if the deceased received an internal injury, which in direct course produced duodenitis, and thereby caused death, then the injury was the proximate cause of the death. In Freeman v. Association, 156 Mass. 351, 30 N. E. 1013, the insured, who died of peritonitis induced by a fall, had previously had peritonitis in the same part, and the previous disease had produced effects which rendered him liable to a recurrence of it. A recovery was upheld, and it was said:

"An injury which might naturally produce death in a person of a certain temperament or state of health is the cause of his death, if he dies by reason of it, even if he would not have died if his temperament or previous health had been different; and this is so as well when death comes through the medium of a disease directly induced by the injury, as when the injury immediately interrupts the vital processes."

See, also, Peck v. Association, 52 Hun, 255, 5 N. Y. Supp. 215; 2 Bac. Ben. Soc. § 490.

If, in the use of the needle, an agency that otherwise would not have been in force, and which was the efficient cause of the injuries, was accidentally set in motion, I see no good reason why it might not be found that the injuries were attributable to the accident, as the sole and proximate cause. I am therefore of the opinion that the

court erred in granting a nonsuit, and that the question whether the injuries complained of were sustained through external, violent, and accidental means, within the meaning of the policy, should have been submitted to the jury. The defendant makes a point that the diseased condition of the plaintiff's leg arose from the use of morphine, and therefore within one of the conditions of the policy. That, however, was, upon the evidence, a question of fact.

HERRICK and PUTNAM, JJ., concur. PARKER, P. J., and LANDON, J., dissent.

Judgment reversed and new trial granted; costs to abide the event.