TEXAS EMPLOYERS' INS. ASS'N v. MITCH-
ELL.

No. 3842.

Court of Civil Appeals of Texas. Texarkana.
April 15, 1930.

Rehearing Denied April 24, 1930.

Leachman & Gardere and R. T. Bailey, all of Dallas, for appellant.

Webb & Webb, of Sherman, for appellee.

LEVY, J. (after stating the case as above).

The appellant insists that the evidence does not justify the conclusion that Mrs. Mitchell's injury was either (1) an accidental injury originating in the work of her employer, or (2) was an injury received by her while she was engaged in and about the furtherance of the affairs or business of her employer. It is believed the facts show an "injury" within the meaning of that term as defined in the Workmen's Compensation Law. Article 8309, R. S. part 4. It was proven that Mrs. Mitchell was vaccinated, and that the vaccination wound became directly infected, and grievous bodily injury resulted therefrom. As affirmatively proven, such bodily injury as that in question here may be brought about and naturally or proximately result from an infection of a vaccination wound. The bodily injury sustained by Mrs. Mitchell was not due, as involved in the find-

ing of the jury, to rheumatism or any other independent disease, but was directly attributable to the infection following the vaccination of her left arm, as must be presumed, taking the evidence most favorable to appellee. The every act of vaccination itself cannot be said to have been an "accident" in the ordinary sense of the word, as it was foreseen, expected, and intended. Mrs. Mitchell went to the doctor's office for that very specific purpose. But the infection and its immediate entry into the system through the vaccination wound was the intervention of an unlooked for circumstance sufficiently constituting the element of accident. There was no intention to have the wound become infected. The vaccination wound and the infection following the vaccination combined to immediately cause and bring about the bodily injury. Therefore such injury would appear, and sufficiently so, to be an injury of accidental nature effected through accidental means. The accident here is comparable to the accident in the following cases: Bailey v. Casualty Co., 8 App. Div. 127, 40 N. Y. S. 513; Id., 158 N. Y. 723, 53 N. E. 1123; Texas Employers' Ins. Ass'n v. Drews (Tex. Civ. App.) 297 S. W. 630; Lewis v. Ocean Accident & Guarantee Corp., 224 N. Y. 18, 120 N. E. 56, 7 A. L. R. page 1129.

It is thought that the relation of the accident to the service or business of the employer was sufficiently established by the proof as an injury having to do with the service of the employer. As defined by the Workmen's Compensation Act, the term "injury sustained in the course of employment" embraces, after excluding injuries resulting from certain causes not applicable here, the following injuries, namely: " * * * Shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." Article 8309, R. S., part 4, § 1, second subsecs. 1–4.

The testimony conclusively shows that Mrs. Mitchell was directed by her employer to be vaccinated, and this direction was coupled with the ultimatum that, unless she did so, she could not work any longer for her employer until after the smallpox epidemic was over. It is made clear by the testimony of the manager that "no member of the state or city board of health," acting as a public agency for the public interest, in any wise directed or caused the vaccination of the employees. The only one who "gave such order to the employees to be vaccinated" was the manager himself, acting for his company. The manager seems to have assembled "all the employees," which numbered between 500 and 525, and then directed them, as testified, as follows: "I told the employees it would be necessary for all of them to be vaccinated or bring a certificate from a physician stating that vaccination was not necessary—either that or to lay off until such time as the smallpox epidemic or scare had passed."

The order for vaccination was given on Thursday, March 22, and the vaccination was to be done "Friday," or before Monday morning, March 26. The circumstances do not reflect the purpose of the manager in so peremptorily ordering the vaccination of the employees to have been to discharge a purely moral obligation to provide for medical attention or to further the personal welfare of the employees. Neither do they reflect his intention to require the vaccination to have been an act entirely outside the range of the employees' service to their employer. The circumstances strongly point to the view that in the emergency of the smallpox epidemic the vaccination was for the purpose of furthering the work or business of the factory by having the employees made immune to smallpox as a precaution against suspension or interruption through smallpox of the regular work or business of the factory. It is conceivable that a smallpox epidemic might interrupt or suspend the regular work of the factory, with a consequent loss of business to the employer, by reason of the employees or any of them contracting the disease, or of the factory being placed under quarantine. The manager made it evident to the employees as an ultimatum that, in case of the failure or refusal of any one of them to comply with the special order of vaccination promptly, such failure or refusal would automatically operate to put such employee in default of duty, subjecting him to suspension from the service during the period of the epidemic. Compliance with the special order was intended to operate as an obligation of employment on the part of the employees, and noncompliance was intended to operate as an act inconsistent with the relation of master and servant, and incompatible with the faithful performance of duty owing the employer. So, in the circumstances, the act of vaccination may be fairly considered as reasonably incidental to the scope of employment of Mrs. Mitchell; for, in the circumstances, such order of vaccination was intended to constitute an added element of the existing employment. The performance of this duty by her, if not the proximate cause, was a concurring cause, of her present injury. The further factual elements are not here controlling, that Mrs. Mitchell was vaccinated at the doctor's office in the evening, after the usual 5 o'clock closing work hour of the factory. She did not, in point of fact or as a matter of pure law, cease to be in the course of her employment, nor was the continuity of her employment broken, merely because of such circumstances. Mrs. Mitchell was, as proven, fulfilling the required condition imposed by her employer in his interest,

at a place and time contemplated by the manager for the performance of the condition so imposed by him.

■ Injury through infection of a wound is generally classed as a compensable injury under the Compensation Law, in case the proof shows either that the infection entering the wound was peculiarly incident to the work or character of business or that the wound or abrasion of the skin was actually received in the scope of the employment, and thereafter came in direct contact with some infectious or poisonous matter, although such poisonous matter be not traceable to the work or character of business of the employed. Blaess v. Dolph, 195 Mich. 137, 161 N. W. 885; Dove v. Alpena Hide & Leather Co., 198 Mich. 132, 164 N. W. 253; Jasionowski v. Industrial Commission, 22 Ohio App. 112, 153 N. E. 247; Millers' Indem. Underwriters v. Heller (Tex. Civ. App.) 253 S. W. 853; Houston Packing Co. v. Mason (Tex. Civ. App.) 286 S. W. 862; Ins. Ass'n v. Drews (Tex. Civ. App.) 297 S. W. 630; Anderson v. Fisher Body Corporation, 239 Mich. 506, 214 N. W. 938; Cockrell v. Industrial Commission, 327 Ill. 438, 158 N. E. 673; Connelly v. Hunt Furniture Co., 240 N. Y. 83, 147 N. E. 366, 39 A. L. R. 867.

The following cases are distinguishable from the present case: Krout v. Hudson Co., 200 Mich. 287, 166 N. W. 848, L. R. A. 1918F, 860; Jefferson Printing Co. v. Industrial Commission, 312 Ill. 575, 144 N. E. 356. In one of these cases the board of health, and in the other the commissioner of public health, ordered the vaccination of the employees of the factory. The court rested the decision of these cases upon the ground that the proof affirmatively showed the vaccination was not ordered or in any wise brought about by the employer, but by a public agency for the public interest; and further showed that the infection was not in any wise due or attributable to the work or place of work, or to the character of business or service of the employer. In the present case the employer himself, through the manager, in furtherance of his business, and not as a state or public agency, ordered the employees to be vaccinated; and the vaccination wound received in the act of vaccination came in direct contact with infectious or poisonous matter, resulting in the injury complained of.

■ Appellant insists that there was error in the discounting of the award without proof and finding by the jury of what a proper discount would be. The legal discount of 6 per cent. was made by the court. There was not a discount at a less sum than the legal rate of interest. It is believed that there was no error to appellant's prejudice. See Texas Employers' Ins. Ass'n v. Jasper Brock, 26 S.W. (2d) 322, lately decided by this court.

■ The appellant next insists that the appellee's compensation should have been computed under first subsec. 5 instead of first subsec. 1 of section 1, article 8309, R. S. Part. The jury finding of $4.16⅔ as an average daily wage was not a finding of actual earnings, nor intended to be so, but was a finding in response to the direction to find "such an amount as she should have earned by working a full day at the prevailing price of the piece work." The evidence is undisputed that Mrs. Mitchell was not paid a daily wage or a salary, but she was paid compensation by "the piece or garment." She was not a seasonal or occasional worker; she testified, "I am a piece garment worker," and "they pay me so much a piece," and "I am paid weekly." She further testified that she had been working in the same employment as a piece worker for her present employer for "more than five years," and that she had actually received from such employer pay checks for 46 weeks out of the 52 weeks immediately preceding her injury. Her actual earnings during the twelve months preceding her injury aggregated $617.10, as admitted and as found by the jury. It is believed that under the admitted facts first subsection 5 instead of first subsection 1 would rule the computation of the compensation. Norwich Union Indemnity Co. v. Wilson (Tex. Civ. App.) 17 S.W.(2d) 68. The facts are unlike Surety Co. v. Hibbs (Tex. Civ. App.) 221 S. W. 303. Therefore Mrs. Mitchell's average weekly wages were 1/52 part of the amount of the annual wages found by the jury. Deducting the legal discount of 6 per cent. for lump sum payment, the judgment should have been entered for $2,680.04.

We have considered all the remaining assignments of error presented, and think they should be overruled.

The judgment is modified so as to allow the award of compensation in the lump sum of $2,680.04, with 6 per cent. interest thereon from July 30, 1929; and, as so modified, the judgment will be in all things affirmed. The appellee will pay costs of appeal.