Weygandt, C. J.
 

 The operative facts are not greatly in dispute. The decisive and interesting question of law presented for the consideration of this court is whether, under the combination of circumstances in this case, the death can be said to have resulted from an accidental physical injury occasioned in the course of employment,
 
 i. e.,
 
 arising out of or in the course of employment.
 

 In attempting to reach a proper conclusion it should be helpful to carefully re-examine the pertinent wording of the Constitution, the statute and the case law of Ohio.
 

 The phrase employed by Article II, Section 35, of
 
 *423
 
 the Constitution of Ohio, is “injuries * * * occasioned in the course of * * * employment.”
 

 In Section 1465-68, General Code, the wording is as follows: “Every employee * * * who is injured * * * in the course of employment, wheresoever such injury has occurred, provided the same was not purposely self-inflicted.”
 

 In the fifth paragraph of the syllabus in the early case of
 
 Fassig
 
 v.
 
 State, ex rel. Turner, Atty. Genl.,
 
 95 Ohio St., 232, 116 N. E., 104, this court used this language: “The provisions in Section 35, Article II of the Constitution, and in the statute with reference to an injury received in the course of employment refer only to an injury which is the result of or arises out of the employment.”
 

 It is evident that the instant question assumes three phases: (1) Did Tucker receive a physical “injury”? (2) If so, was it “accidental”? And (3) did it “arise out of or in the course of employment”?
 

 The first of these presents little difficulty when it is remembered that the process of vaccination necessitated a scarifying and laceration of the skin and flesh with its attendant bleeding and pain. Beyond cavil this was a physical injury to the tissues of the arm; and this is so despite the expectation that the ultimate result of the process would be a distinct benefit greatly outweighing the apparent temporary minor disadvantage of the original trauma.
 

 The second phase of the matter is more difficult. Did Tucker experience an accident?
 

 In 28 Ruling Case Law, 787, appears the following helpful discussion of the term “accident”: “While there has been a great deal of discussion as to the import of the term ‘accident,’ in the phrase ‘personal injury by accident arising out of’ the employment, it is evident that the word must be taken to be descriptive of the mental state of the employee at the time of the calamity. An ‘accident’ is something which is unfore
 
 *424
 
 seen, and, as has been noted, the element of the event being unforeseen by the plaintiff forms the basis of every right of recovery. The compensation act authorizes an award of compensation when the injury occurs by ‘accident,’ and in this respect is merely declaratory of the common law. The word in question is employed in contradistinction to the expression ‘wilful misconduct,’ which is found ordinarily in the same section or paragraph of the statute. Construing the British statute, Lord MacNaghten, in the leading case of Fenton v. J. Thorley
 
 &
 
 Co., [1903] A. C. 443, said: ‘The expression “accident” is used in the public and ordinary sense of the word, as denoting an unlooked for event which is not expected or designed.’ Lord Wrenbury says that ‘accident’ means ‘some mishap unforeseen and unexpected.’ And Judge Siebecker of the Wisconsin court says that ‘accidental’ contemplates ‘an event not within one’s foresight and expectation, resulting in a mishap causing injury to the employee.’
 
 [Venner
 
 v.
 
 New Dells Lumber Co.,
 
 161 Wis., 370, 154 N. W., 640, L. R. A., 1916A, 273, Ann. Cas., 1918B, 293.] Again, Mr. Justice Pound of the New York court says that the statute contemplates injuries ‘not expected or designed by the workman himself.’ ”
 
 Heitz
 
 v.
 
 Ruppert,
 
 218 N. Y., 148, 112 N. E., 750, L. R. A., 1917A, 344.
 

 It is agreed by counsel that Tucker’s death resulted directly from the vaccination; but the plaintiff in error contends that the vaccination was not an accident. It must be conceded that there is no element of accident in an ordinary vaccination; but according to the evidence this was clearly not that sort. On page 56 of the printed record Dr. Garwood was asked: “Was the infection in his wound unusual to vaccination?” The answer was: “Yes, I think anyone who would see Mr. Tucker in his condition would have said so.” Again on the same page Dr. Garwood said: “I have seen hundreds of cases of paralysis coming on and I never
 
 *425
 
 saw 'one come on like this.” Then on page 57 Dr. Garwood was asked: “Is this type of case a nsnal one, Doctor ? ’ ’ The answer was:“No, it is very nnnsnal. ’ ’ On page 62 Dr. Hein said: “In onr office in the last fifteen years — this is an estimate, I think we have vaccinated about five thousand people and that is the first experience we have had of that type. ’ ’ The plaintiff in error contends that Tucker’s death resulted simply because he was one of those individuals whose system cannot withstand the introduction of vaccine. On the other hand, the defendant in error insists that the death may have been caused either in this wise or by other. infection entering the vaccination wound. However, the plaintiff in error maintains that there is no evidence to substantiate this latter theory. The fact is that the evidence does not definitely disclose which theory is correct. Neither of the two attending physicians was willing or able to do more than venture a cautious opinion. Possibly this is explained by the fact that Dr. Garwood did not visit Tucker until nineteen days after the vaccination and four days before death occurred, and Dr. Hein, the company physician, who vaccinated Tucker, did not see him again until the day he died. But the result in this case must be the same under each theory. Irrespective of which thing happened, it was manifestly unforeseen, unusual and unexpected, and therefore accidental. Can it logically be considered that the element of accident was any the less involved if the introduction of vaccine caused death for the first time in an experience of five thousand cases covering a period of fifteen years? Can it be said that the result was foreseen, usual or expected?
 

 There are no reported Ohio cases determinative of this matter. In their briefs counsel cite numerous authorities, but only two of them seem to be closely analogous to the instant case. The first is
 
 Neudeck
 
 v.
 
 Ford Motor Co.,
 
 249 Mich., 690, 229 N. W., 438. This
 
 *426
 
 language appears in the opinion: “It may be conceded that the vaccination wound was not an accident because it was not an ‘unforeseen event.’ But vaccination is usually harmless, and, under the above authorities, infection therefrom is an accident. ’ ’
 

 The second case is
 
 Texas Employers’ Ins. Assn.
 
 v.
 
 Mitchell
 
 (Tex. Civ. App.), 27 S. W. (2d), 600. The following is the language of the opinion: “The bodily injury sustained by Mrs. Mitchell was not due, as involved in the finding of the jury, to rheumatism or any other independent disease, but was directly attributable to the infection following the vaccination of her left arm, as must be presumed, taking the evidence most favorable to appellee. The every [very] act of vaccination itself cannot be said to have been an ‘accident’ in the ordinary sense of the word, as it was foreseen, expected, and intended. Mrs. Mitchell went to the doctor’s office for that very specific purpose. But the infection and its immediate entry into the system through the vaccination wound was the intervention of an unlooked for circumstance sufficiently constituting the element of accident. There was no intention to have the wound become infected. The vaccination wound and the infection following the vaccination combined to immediately cause and bring about the bodily injury. Therefore such injury would appear, and sufficiently so, to be an injury of accidental nature effected through accidental means.”
 

 The third and final phase of this matter is simplified by the uncontradicted evidence disclosed by the record. Did Tucker’s injury arise out of or in the course of his employment?
 

 The plaintiff in error insists that vaccination was a known condition precedent to Tucker’s employment. The chief difficulty with this contention is that there is no evidence to sustain it. The only such testimony offered by the company was that of the plant hospital supervisor, Stacey, who said a vaccination rule had
 
 *427
 
 been adopted; bnt he admitted that he did not employ Tncker and did not know whether Tucker had been informed of the rule. On the other hand, a witness by the name of Peacock testified that he and Tucker were together when they applied for employment, worked together, and were vaccinated together, but were told nothing about vaccination until the night their foreman ordered them to leave their work and go to the plant hospital. This was after they had been at work eight days.
 

 It is also urged by the plaintiff in error that Tucker was given the option of being vaccinated by the plant physician or by his own. Again, it is true that there is evidence showing the adoption of such a rule by the company, but there is none to the effect that Tucker was informed of such option. On the contrary, the witness Peacock testified that the foreman mentioned no option, and he recalled no such suggestion by the plant physician.
 

 Another contention of the plaintiff in error is that the.purpose of the company’s vaccination rule was to protect the citizens of the city of Toledo and preserve the public health. The defendant in error insists that the only purpose the company had in mind was its own advantage, by preventing interference with its plant operations. The probable truth is that both motives were present. The evidence shows that the health commissioner of the city had recommended such a rule to the company in order to preclude the recurrence of a smallpox epidemic, but it is agreed that the commissioner did not have authority to compel compliance with his recommendation. On pages 81 and 82 of the record appear the following question and answer: “This was a practical device, worked out by the officers of the plant so that the operation of the plant would not be affected by a quarantine or an epidemic or something of that kind? A. Yes, I would say so. I would feel that the Health Commissioner, I can’t
 
 *428
 
 say exactly as to what Ms words were, Mr. R. E. Carpenter, onr vice-president, is better able to say that it was but in order to keep onr plant clean Dr. Orr advised that we have every employee vaccinated, having had two of them it upset our plant materially, it caused a great loss of production on account of men losing time to go to their family doctor when they did and losing time when the arm got sore and when a man’s arm is sore he doesn’t work as well — it was inconvenience all'around, we didn’t want to have 'anything occur when we were very busy that would upset the working conditions of the plant. Inasmuch as Dr. Orr had urgently requested that that be done we went ahead with it.”
 

 Furthermore, it is agreed that Tucker.would have been discharged if he had not been vaccinated. In other words, it was Impossible for him to continue his employment without complying with the company’s order. The peremptory nature of the foreman’s instruction is shown by the fact that the moment Tucker received Ms order he and his companion, Peacock, left their' work and went to the plant hospital. Within fifteen or twenty minutes the process of vaccination was completed and they were back at their work. In this connection it is worthy of note that their absence from the work resulted in no deduction from their pay.
 

 Under this combination of circumstances can it be said that the injury did not arise out of or in the course of Tucker’s employment; or can it be said that the injury had its cause outside of and disconnected with the employment?
 

 This court is unanimously of the opinion that both reason and authority manifestly require a contrary conclusion.
 

 In the case of
 
 Neudeck
 
 v.
 
 Ford Motor Co., supra,
 
 the opinion contains the following statement:
 

 “ ‘Louis Neudeck, deceased, husband of Delia Neu
 
 *429
 
 deck, claimant, was employed by tbe Ford Motor Company in latter part of July, 1928, and immediately upon being employed he was ordered by tbe officials of the Ford Motor Company to be vaccinated and be was vaccinated thereupon, at tbe Ford Motor Company’s plant, and * * * as an effect of said vaccination Mr. Neudeck incurred a streptococcus poisoning, tbe focus of the infection being tbe vaccinated arm and as a consequence Mr. Neudeck died of a streptococcus poison September 3rd, 1928. Tbe claimant, Delia Neudeck, was totally dependent on tbe deceased, Louis Neudeck.’
 

 “To this was added tbe testimony of tbe chief surgeon of defendant [to tbe effect] that defendant bad been requested by the Detroit board of health to have vaccinated against smallpox all new employees and old ones not successfully vaccinated within five years. Defendant complied with tbe request as to new employees, but did not as to old ones. * * *
 

 “Counsel have cited only two vaccination cases, neither of which is determinative. In
 
 Freedman
 
 v.
 
 Spicer Mfg. Corp.,
 
 97 N. J. Law, 325 (116 Atl., 427), tbe employee was vaccinated in defendant’s plant, returned to bis desk, fainted as a result of tbe inoculation, fell to tbe floor, fractured bis skull, and died, and tbe court, without opinion, held it a compensable accident. In
 
 Krout
 
 v.
 
 J. L. Hudson Co., supra
 
 [200 Mich., 287, 166 N. W., 848, L. R. A., 1918F, 860], tbe employee was vaccinated by a physician employed by tbe city board of health, later contracted infection, and tbe court held it not a compensable accident because there was no evidence that tbe germs secured lodgment in tbe employee’s arm in tbe course of her employment with defendant and no connection was shown between tbe employment and tbe infection following vaccination.
 

 “Tbe case at bar is readily distinguishable from tbe
 
 Krout Case.
 
 There tbe vaccination was by a pub-
 
 *430
 
 lie agency, independent of the employer and employment. Here the vaccination was performed by defendant’s physician, was suffered by the employee under direct order of the defendant, neither the employee nor defendant was under the compulsion of public authorities, but defendant was acting in a merely discretionary compliance with a request. The vaccination occurred in the course and out of the employment.”
 

 In the case of
 
 Texas Employers’ Association
 
 v.
 
 Mitchell, supra,
 
 appears the following reasoning, at page 603: “The circumstances strongly point to the view that in the emergency of the smallpox epidemic the vaccination was for the purpose of furthering the work or business of the factory by having the employees made immune to smallpox as a precaution against suspension or interruption through smallpox of the regular work or business of the factory. It is conceivable that a smallpox epidemic might interrupt or suspend the regular work of the factory, with a consequent loss of business to the employer, by reason of the employees or any of them contracting the disease, or of the factory being placed under quarantine. The manager made it evident to the employees as an ultimatum that, in case of the failure or refusal of any one of them to comply with the special order of vaccination promptly, such failure or refusal would automatically operate to put such employee in default of duty, subjecting him to suspension from the service during the period of the epidemic. Compliance with the special order was intended to operate as an obligation of employment on the part of the employees, and noncompliance was intended to operate as an act inconsistent with the relation of master and servant, and incompatible with the faithful performance of duty owing the employer. So, in the circumstances, the act of vaccination may be fairly considered as reasonably incidental to the scope of employment of Mrs. Mitchell; for, in
 
 *431
 
 the circumstances, such order of vaccination was intended to constitute an added element of the existing employment. The performance of this duty by her, if not the proximate cause, was a concurring cause, of her present injury. * * *
 

 “The following cases are distinguishable from the present case:
 
 Krout
 
 v.
 
 Hudson Co.,
 
 200 Mich., 287, 166 N. W., 848, L. R. A. 1918F, 860;
 
 Jefferson Printing Co.
 
 v.
 
 Industrial Commission,
 
 812 Ill., 575, 144 N. E., 856. In one of these cases the board of health, and in the other the commissioner of public health, ordered the vaccination of the employees of the factory. The court rested the decision of these cases upon the ground that the proof affirmatively showed the vaccination was not ordered or in any wise brought about by the employer, but by a public agency for the public interest; and further showed that the infection was not in any wise due or attributable to the work or place of work, or to the character of business or service of the employer. In the present case the employer himself, through the manager, in furtherance of his business, and not as a state or public agency, ordered the employees to be vaccinated; * * ”
 

 In view of the foregoing, the judgment must be affirmed.
 

 Judgment affirmed.
 

 Allen, Stephenson, Jones, Matthias, Bevis and Zimmerman, JJ., concur.