# Lindeman v. State Emergency Relief Board et al.

*J. Andrew Frntz* and *Harvey B. Lutz*, for claimant.

*Ralph H. Behney, S. H. Torchia,* and *Harold E. Martin,*

SCHAEFFER, J., October 27, 1939.—This is an appeal by the State Workmen's Insurance Fund, defendant, from an order of the Workmen's Compensation Board affirming the referee's award of compensation to claimant. It involves an inoculation with anti-typhoid serum, which was administered by the physician of the employer and on employer's premises. The death of claimant's husband

resulted from a previously existing heart condition which was aggravated and accelerated by the inoculation.

John A. Lindeman, decedent and husband of claimant, was employed by the State Emergency Relief Board prior to and on March 23, 1936, in a building located close to the Susquehanna River in Harrisburg, Pa. He was working there under dry and healthful conditions until the extraordinary flood of March 17, 18, and 19, 1936, which inundated the entire first floor and part of the second floor of the building. As the waters receded there remained an accumulation of mud and debris, thought to contain typhoid bacteria. On March 23, 1936, at the suggestion of decedent's employer, decedent with other employes submitted to an inoculation with anti-typhoid serum administered by the physician of the employer. It appears that the anti-typhoid vaccine, composed of three serums, was administered in one inoculation. The inoculation was given as a preventive for typhoid fever. It is admitted that decedent had a preëxisting heart condition of long duration. The referee found as a fact that the inoculation was a marked contributory factor in causing the death of decedent, although the main cause of the death was heart failure. Decedent died on May 21, 1936.

The referee found inter alia: "Taking into consideration all the testimony in the case we find that decedent died of coronary thrombosis; that his death was the result of a preëxisting heart disease, which was aggravated and accelerated by the inoculation with anti-typhoid serum on March 23, 1936. We find further that decedent was exposed to the dangers of typhoid by reason of his employment in Harrisburg, Pa.; that the inoculation with anti-typhoid serum with its subsequent effect upon his body was an accidental injury, and that decedent died as a result of such accidental injury." This court is limited to a determination "whether there is sufficient competent evidence to support the findings of fact made by the referee and the board, and if, upon such findings, the law has been properly applied": Knisely v. Knisely

et al., 120 Pa. Superior Ct. 140, 143. The court has no power to weigh the evidence and revise the findings of fact by the board, although the court may feel that the weight of the evidence as a whole is against the findings of fact so made by the board: Savolaine v. Matthew Leivo & Sons et al., 131 Pa. Superior Ct. 508; Paulin v. Williams & Co. et al., 327 Pa. 579; Imhoff v. City of Lancaster, 44 Lanc. L. R. 685.

Appellant in its brief states: "While it is true that the medical testimony offered by claimant supports a finding that the inoculation was a marked contributory factor in the death of claimant's husband, it may be stated that in the absence of proof of an accident, this medical testimony can be of little support in determining whether decedent's death is compensable: O'Neill v. Navigation Co., 108 Pa. Superior Ct. 425; Rocco v. Ellsworth Collieries Co., 111 Pa. Superior Ct. 508; Amentlar v. Lehigh Coal Company, 131 Pa. Superior Ct. 97; Fetrow v. Sales Company, 132 Pa. Superior Ct. 39."

The question, therefore, arises whether there was any direct or circumstantial evidence of an accident within the meaning of The Workmen's Compensation Act of June 2, 1915, P. L. 736. In Lacey v. Washburn & Williams Co., 309 Pa. 574, 577, the court said:

"The word accident—as used in the act—must be interpreted in its usual, ordinary, popular sense. Webster has defined it as 'an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance; contingency'. Many courts have quoted this definition, and some have added to or embellished it, but in reality few have improved upon it. It would answer no good purpose to call attention to the many immaterial variations and additions. Our decisions interpreting the word as used in our compensation law have substantially clung to this meaning."

The court in its opinion cited Gausman v. R. T. Pearson Co., 284 Pa. 348, 354, in which it was said: "To consti-

tute an accident there must be some untoward occurrence aside from the usual course of events."

To secure compensation for death or disability there must be proof both of an accident and of an injury. An injury cannot be inferred simply because there was an accident. The injury or death must result from an accident in the course of employment: Miller v. Lycoming Mfg. Co. et al., 135 Pa. Superior Ct. 558 (1939) ; Harring v. Glen Alden Coal Co., 332 Pa. 410.

There is no specific finding of fact by the referee or board that the inoculation was administered properly or in the usual manner. The testimony of Dr. W. K. Baer, testifying for claimant, is that the deceased was not a fit subject for an inoculation with anti-typhoid vaccine if he had any cardiac weakness. He also testified that if a particular or physical examination had been given to the deceased prior to the inoculation, the vaccine would not have been given. He testified, with respect to the effects of the inoculation, as follows:

"Very often there is quite a rise in temperature, a febrile state, which of course always stimulates heart action, that is, it imposes more work on the heart. And any man who has any heart weakness or blood vessel weakness, of course should not be exposed to any factor that would put an undue strain on that mechanism."

Dr. Howard E. Milliken, witness for claimant, testified that during the flood of March 1936 he gave more than 1,200 anti-typhoid inoculations. He said:

"If I found anybody suffering from advanced cardiac disease . . . I didn't administer the vaccine . . . because of the ill effects of vaccine on people with existing cardiac disease. . . . It was dangerous with preëxisting heart disease."

Dr. Robert Denison, witness for defendant, testified that he also inoculated several hundred people during the flood of 1936 and that about six of them had heart disease. He explained, however, that most of them were his private patients. He said:

"If a man had a very serious heart disease I would not give it to him, but I would have to know the patients, and I know my own patients."

It is self-evident from the medical testimony referred to that an anti-typhoid inoculation should not be administered to one suffering with a serious heart disease and that there should be a previous examination or knowledge of the patient's physical condition.

There is no Pennsylvania decision ruling the case at bar. In 1 Bradbury's Workmen's Compensation and State Insurance Law (2d ed.), p. 397, appears the following:

"An employé obeying orders of his superior and submitting to an operation (vaccination), ordinarily harmless, who is disabled thereby, is injured within the meaning of the Federal Act and is entitled to compensation. *Re C. B. Flora*, Op. Sol. Dep. C. & L., p. 188."

In Bailey v. The Interstate Cas. Co. of N. Y., 8 App. Div. 127, 40 N. Y. Supp. 513, a physician, feeling exhausted, administered to himself a hypodermic injection, resulting in inflammation and disability. In a suit on an accident policy, defendant company contended that the disability was not caused by an accident. The Court of Appeals of New York decided that the insertion of the needle was an accident and that the company was liable. In Hornetz v. Philadelphia & Reading Coal & Iron Co., 277 Pa. 40, an award for the death of an employe was sustained where the death was due to dilatation of the heart caused by an anaesthetic administered for the purpose of performing a surgical operation due to the compound fracture of a finger sustained in the course of employment. That case is distinguishable because the anaesthetic was not used as a preventive. In Rigney v. Snellenberg & Co., 90 Pa. Superior Ct. 237, compensation was allowed for the loss of the use of a hand where the disability was directly attributable to the manner in which the hand was treated by the physicians, after re-

ceiving a blow on the hand in the course of his employment. In Flowers v. Canuso & Son et al., 115 Pa. Superior Ct. 234, claimant's husband sustained an injury in the course of his employment and while receiving medical attention at a hospital he was given a tetanus anti-toxin injection. Shortly after receiving the injection, he suffered an acute dilatation of the heart, resulting in his death. It was found that there was a causal connection between the injury, its treatment, and the death. Compensation was allowed. There the injection was for a corrective and not a prophylactic purpose.

The instant case is not free from doubt. The court realizes that the humane spirit of The Workmen's Compensation Act, supra, cannot be extended beyond its legitimate scope, but the general policy of the courts in this State is to construe these laws liberally and in case of doubt to favor the employe. The Workmen's Compensation Act was passed for the benefit of workers and is authorized by the police power of the State: Pater v. Superior Steel Co., 263 Pa. 244; Lubanski et al. v. Delaware, Lackawanna & Western R. R. Co., 81 Pa. Superior Ct. 538. The court is not unmindful of the fact that under The Workmen's Compensation Act the employer and the insurance carrier are also entitled to fair consideration and should not be expected to pay claims which are not justified under the evidence and the law. Nevertheless, the court feels, under the authorities cited and for the reasons set forth in this opinion, that the award of compensation to claimant both by the referee and the board should be sustained. Inoculation is not necessarily an accident, but under the particular and unusual facts and circumstances of the case at bar it was a compensable accident. The death of claimant's husband resulted from an unexpected, unforeseen, and untoward event.

And now, October 27, 1939, the exceptions are overruled and the appeal from the decision of the Workmen's Compensation Board in this cause is dismissed.