GARCIA et al. v. TEXAS INDEMNITY INS. CO.

No. 11875.

Court of Civil Appeals of Texas. Galveston.

Oct. 16, 1947.

Rehearing Denied Nov. 6, 1947.

J. A. Copeland and C. F. Tucker, both of Houston, for appellant.

James W. Mehaffy, Bernard J. Mackin, and Baker, Botts, Andrews & Walne, all of Houston, for appellee.

CODY, Justice.

This is a workmen's compensation case. The appellee is the insurance carrier; the appellants are the widow and children of the employee, Matthew Garcia; said employee died as a result of injuries received on October 17, 1942, on his employer's premises in Houston, Texas. The employer was Montgomery Ward & Co., Inc.

The trial was to a jury. At the conclusion of appellants' evidence, and again at the conclusion of all the evidence, the appellee moved for an instructed verdict, which motions were refused. In response to special issues, the jury found in favor of the appellants. The appellants thereupon moved for judgment on the verdict, and appellee moved for judgment non obstante veredicto. The court refused appellants', and granted appellee's motion, and rendered judgment for appellee. The appellants predicate their appeal on 30 points. Such points cover more than seven pages of their brief. But they are subject to being summarized as follows:

1. Appellee's motion for judgment non obstante veredicto was insufficient in law to invoke the court's jurisdiction under the provisions of Rule 301, Texas Rules of Civil Procedure, because appellee's motions for instructed verdict did not comply with the mandatory provisions of Rule 268, T.R.C.P., in that they did not state any specific grounds for a directed verdict. Hence the court erred in granting the motion for judgment non obstante veredicto.

2. The court erred in granting the motion for judgment non obstante veredicto, because the evidence raised the issue of whether the death of Matthew Garcia was accidental injury sustained in the course of his employment.

3. The court erred in excluding the proffered expert testimony of appellants' witness, A. J. Ellis, the mortician, as to his opinion whether the wounds found by him on the head and body were such as to produce his death.

4. The court erred in excluding the proffered testimony of appellants' witnesses, Rosa Mayorga, Ernest Villareal and Rachael Garcia, as to the res gestæ statements made to them on the night of Garcia's death by appellee's witness, L. H. Carr.

5. The court erred in excluding the proffered testimony of appellant, Mrs. Dolores Garcia, as to statements made to her the night before the accident by the deceased.

Opinion

We overrule appellants' first point.

Rule 268 provides: "A motion for directed verdict shall state the specified grounds therefor." Appellee's motion for directed verdict, made at the conclusion of appellants' evidence, assigned as grounds therefor that appellants had failed: "to introduce any evidence indicating that the said Matthew Garcia, deceased, died as a result of an accidental injury within the meaning of the Workmen's Compensation Act of the State of Texas." The motion for directed verdict, made at the conclusion of all the evidence, failed to specify grounds therefor. The court refused said motions, and appellee has not assigned said failure as error. So the question is not formally before us whether the court erred in refusing to direct a verdict for appellee. But for the purpose of passing on appellants' first point, we will assume that appellee's motions for directed verdicts were fatally defective for failure to specify the grounds for a verdict to have been directed.

Boiled down, appellants' first point comes to this. That, by force of Rule 301, the court in this case was without jurisdiction to grant appellee's motion for a judgment non obstante veredicto, hence the granting of said motion was reversible error. Rule 301, so far as here material, reads: "The

judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity. *Provided, that upon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper.* * * *" (Emphasis supplied.)

Rule 301 was formerly Art. 2211. Before it was amended to permit the granting of a motion for judgment non obstante veredicto, the court was bound to render the judgment to conform to the verdict. As a consequence of the rule, as it now reads, jurisdiction was conferred on the court to render a judgment non obstante veredicto. But, since the parties to a suit have the constitutional right to trial by jury, jurisdiction could not be conferred upon the court to disregard the verdict of the jury if in fact a jury question had been presented, and the rule was so framed. The Rule does not make it a condition precedent to the exercise of such jurisdiction that a motion for a directed verdict must have been seasonably filed and urged. And if a motion for a verdict is defective to the extent that it would have constituted error on the part of the court, had same been granted, nonetheless the court has ample jurisdiction under the rule to grant a motion for judgment non obstante veredicto, if by so doing the constitutional right to trial by jury is not invaded thereby. We find appellants' contention that the court was without jurisdiction to consider the motion for judgment non obstante veredicto without merit based upon appellants' contention that the motions for directed verdict were fatally defective. This brings us to appellants' point 2, which presents that the court erred in granting the motion, because there was evidence presented which raised the issue of whether the death of Matthew Garcia was an accidental injury sustained in the course of his employment.

The cause was submitted upon four special issues, which, as answered by the jury, found:

1. That on or about October 17, 1942, Matthew Garcia received an injury in the course of his employment. In connection with said issue, the jury were instructed that the term "injury" as used in the issue meant "damage or harm to the physical structure of the body and such diseases as naturally result therefrom." And, further in that connection they were instructed that "in the course of his employment" meant an injury of such kind and character as had to do with and originates in the business of the employer and is brought about by a risk which is incidental and arises out of the work the employee has to do in fulfilling his contract for services, and to which the employee would not be subjected but for his employment.

2. That the injury was accidental.

3. That the injury was a producing cause of his death. In connection with said issue the jury was instructed that "producing cause" meant a cause in which in a natural and continuous sequence would produce death and without which death would not have occurred.

4. That the death of Matthew Garcia was not due to natural causes.

No objections were made to the special issue as submitted, and the sole question under this point is whether there was sufficient evidence to sustain the jury's findings. In considering whether there was sufficient evidence to support the finding, or more accurately to raise the fact issue that the death of Matthew Garcia was an accidental injury sustained in the course of his employment, the same must be considered in the light most favorable to appellants. See Johnson v. Moody, Tex.Civ.App., 104 S.W.2d 583, 585. As so considered, the evidence was to the following effect:

Matthew Garcia was a man of 37 years of age, and appeared to be in good health, and had passed various physical examinations as being in good health. He had formerly been employed by Montgomery Ward & Co., Inc., and had been re-employed, and had worked about two weeks when his death occurred. He worked on what is called the "dock", but which seems to have been the place provided at the store of Montgomery Ward for the loading and unloading of trucks. There were two entrances to the "dock", separated by a pilaster. One was indicated by the legend "Cus-

807

tomers Delivery Only", and the other was indicated by the legend "Freight Trucks Only". There were heavy iron gates which opened and shut each entrance. These gates had what would be called pickets, if they were of wood, that is the iron bars had spaces or interstices between them, and were joined to cross rails, much as wooden pickets are so joined. The gates were opened by raising and lowering, there being ropes on pulleys used for such purposes. It required two men to raise or lower the gates. Apparently they were opened when the store opened for business and remained open until the close of the day's business, when they were closed. The day of the accident was on Saturday, and the gates were not due to be closed until 9:00 P.M. It was among the duties of Garcia to help close the gates. His work for the day had been finished, except closing the gates, and the accident occurred within less than 10 minutes to 9:00 P.M., while he was waiting to close the gates when 9 o'clock arrived.

Apparently the only eye-witness to the accident was a Mr. Stevens, an employee of Montgomery Ward & Co., whose statement was that he and Garcia were standing on the driveway of the loading "dock" on the Travis Street side of the store waiting for 9 o'clock so they could pull down the gate. That he and Garcia were talking, and that Garcia appeared normal in every way and stated he would be glad to go home and see his wife and babies. That "all of a sudden Garcia jumped up in the air and sort of sideways and I believe that when he jumped up and sidewise he ,hit against the concrete post [i. e., the pilaster separating the two entrances] and then fell to the ground. I saw that he was unconscious and his eyes rolling around in his head and his arms were flailing as though he was having rigors. Also while on the ground he commenced urinating. He was unable to talk, and I tried to feel his pulse but couldn't. The policeman on the corner of Travis and Texas intersection came running up and the policeman remarked that the man (Garcia) was having a 'fit'. * * *"

"I did not witness any accident in which Garcia might have been involved, and I do not believe there was any work to be done by him that caused him to sustain an in-

jury. He did not complain to me at any time during the day or evening of feeling badly. He appeared to be in good spirits and was a willing worker, and I did not notice anything out of the ordinary prior to the moment that Garcia suddenly jumped up in the air and fell to the sidewalk in an unconscious condition. I do not believe that Garcia sustained any injury while working."

■ The evidence by the policeman who arrived after Garcia was on the ground, and unconscious, adds nothing to the evidence already stated, neither did the verdict of the Justice of the Peace acting as coroner. The Justice testified that his examination of Garcia's body showed a small laceration in the left eyebrow which could have been caused by a fall, and there was an abrasion on the left cheekbone about the size of a 25 cent piece. The mortician testified for appellants in addition to the foregoing that there was a hole or depression in Garcia's temple. That the bone in the temple appeared to be fractured, that it was cut to the bone, like something had hit him on the forehead. In response to a hypothetical question a physician, testifying for appellants, gave as his opinion that what caused the hole in the temple probably caused Garcia's death. The evidence would sustain the conclusion that Garcia did not have epilepsy and did not die from a seizure. And so the evidence was sufficient to sustain the jury's answer to special issue No. 4, that the death was not due to natural causes.

■ But it is well settled that, in order to recover for an accidental injury, the plaintiff has the burden of establishing that the accidental injury was sustained in the course of the employee's employment. In Kimbrough v. Indemnity Insurance Co., 168 S.W.2d 708, 709, writ refused, this court speaking through Chief Justice Monteith held that under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., "an employee must prove that not only that his injury occurred while he was engaged in or about the furtherance of the affairs or business of his employer, but also that the injury was of such kind and character as had to do with and originated in the work, trade, business or profession

of the master. Not every injury which occurs at or near the place of employment is compensable. The injury must be brought about by a risk which is incidental to and arises out of the task the workman has to do in fulfilling his contract of service, and to which the employee would not be subjected but for the employment contract for service." Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238; 45 Tex.Jur. 463, 464. " 'An injury is received "in the course of" the employment when it comes while the workman is doing the duty which he is employed to perform. It arises "out of" the employment, when there is apparent to the rational mind upon consideration of all circumstances, a causal connection between the conditions under which the work is required to be performed, and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" employment. It need not have been foreseen or expected, but after the risk it must appear to have its origin in a risk connected with the employment and to have flowed from that source as a rational consequence.' " Quoted from 45 Tex.Jur. 463, supra.

■ We have carefully considered the evidence, and it fails to establish a causal connection between the employment of Garcia and the fall sustained by him. We have omitted giving inferences which appellants have contended could have been legitimately drawn from the evidence for they are not, in our opinion legitimate inferences, and no purpose would be served in setting them forth. It appears from authorities cited by appellants from other states that, under the Workmen's Compensation Act in such other states, that the evidence would have been sufficient to sustain a recovery.

While the witness Ellis, a mortician, was testifying for appellants, he was asked the question, "From your training and experience as a mortician and handling the body of this and other dead persons and your observation of the nature and extent of what you saw on the face of Garcia, are you able to state an opinion as to what might have caused those wounds you described?"

■ Thereupon the appellee objected that the witness was not qualified as an expert to answer the question, whereupon the jury was retired, and the witness was questioned and cross-examined for the purpose of the bill of exceptions. It was not an abuse of discretion on the part of the Court to rule that the mortician was not shown to be qualified as an expert to state what might have caused the wounds. That is to say, "It is within the wide discretion of the trial court to pass upon the competency of a witness purporting to be an expert." Hutchins v. Humble Oil & Refining Co., Tex.Civ.App., 161 S.W.2d 571. We overrule appellants' point, which we have designated as their point 3, but which is urged as their point 28, in their brief.

■ The appellants object in their point, designated 29 in their brief, but which we have designated as their point 4, of the court's exclusion of testimony of their witnesses Rosa Mayorga, Ernest Villareal and Rachael Garcia, as to "res gestæ" statements made to them by L. H. Carr, to the effect that Garcia "had just been hurt in an accident." The record discloses that Carr was not present at the accident, and any statement made by him would necessarily have been hearsay. See San Antonio Public Service Co. v. Alexander, Tex.Com. App., 280 S.W. 753. We overrule the point.

■ We also overrule the point urging as error the exclusion of testimony as to what Garcia told his wife the day before the accident. Such evidence was pure hearsay, and was no part of the res gestæ of the event which did not happen until the following day.

The points urged by appellants do not present reversible error, and the judgment is affirmed.