## Dolores Garcia et al v. Texas Indemnity Insurance Company.

No. A-1494. Decided March 10, 1948.
(209 S. W. 2d Series, 333.)

*J. A. Copeland* and *C. F. Tucker*, both of Houston, for petitioners.

*B. J. Mackin* and *Baker, Botts, Andrews & Walne,* all of Houston, for respondent.

Mr. JUSTICE BREWSTER delivered the opinion of the Court.

This is a workmen's compensation case filed by Dolores Garcia et al, petitioners, against Texas Indemnity Insurance Co., respondent. The jury's answers to the special issues were favorable to petitioners, but the trial court overruled their motion for judgment on the verdict and granted respondent's motion for judgment non obstante veredicto. That judgment was affirmed by the court of civil appeals. 205 S. W. (2d) 803.

Mathew Garcia, husband and father of petitioners, was a dock hand at a merchandising store, in Houston. His principal work was to load and unload trucks. There were two entrances to the dock where this loading and unloading was done, one for customer's delivery and the other for freight trucks; they were separated by a square brick and concrete post reaching from the ground to the second floor. This post was set in a concrete block, which extended out several inches around the base of the post with rounded edges and corners. However, to protect the post from trucks entering and leaving the dock, steel edgings were set up on this concrete base to cover each corner of the post to a height of 4 feet and 7 1/2 inches above the ground. These edgings were 3 1/2 inches wide and half an inch thick; and where they joined at the top on each corner of the post they produced a sharp corner, which "sticks out a little over an inch" from the post. A witness for respondent testified that he measured these sharp corner "with reference to a man's head if a man was standing there"; that "on a normal size individual" they would come "about his head or the cheek if he fell"; that "if a man fell straight down from a standing position" this sharp corner would be in the way.

The entrances to the docks were inclosed by steel gates, which, were operated from above by means of pulleys and ropes. These gates were raised each morning and lowered at the close of business each evening. It required two men to operate them, and one of Garcia's duties was to assist in that work.

On Saturday evening, October 17, 1942, at about 8:55 o'clock and some thirty minutes after his other work had been completed, Garcia was waiting for 9 o'clock when he and a fellow-worker, named Stevens, were to lower these gates. In testifying for respondent, Stevens said that as they waited he and Garcia were standing near the post, talking; that Garcia was leaning against the post on his left shoulder and facing toward the street; that Garcia had said that he wanted to hurry home to his wife and children, when "all of a sudden he jumped up and fell to the pavement and kicked and threw his arms in the air, he jumped up, he kinda jumped sideways and it scared me and it is possible he hit the post"; that, after Garcia fell to the sidewalk he was "kicking and throwing his hands above his head and his eyes looked kinda like they was popped out," and that "he was urinating." In a sworn statement made shortly after the occurrence Stevens stated: "All of a sudden Garcia jumped up in the air and sort of sideways and I believe that when he jumped up and sidewise he hit against the concrete post * * * and then he fell to the ground. I saw that he was unconscious and his eyes were rolling around in his head and his arms were up and flailing as though he was having rigors. Also while on the ground he commenced urinating."

Within a few minutes an ambulance took Garcia to a hospital and at about 9:15 his widow was being told that he was dead. The mortician who prepared the body for burial testified that there was a "jagged" hole in Garcia's left temple which had to be filled with wax and that a cut ran through the upper part of his left eye brow out into the temple; that he was called to the Garcia home three times before the funeral to rewax the temple because fluid kept escaping through the fracture.

Without objection, exception or request for other issues by either side, the trial court submitted to the jury four special issues, in response to which the jury found: (1) that on October 17, 1942, Garcia received an injury in the course of his employment with his store; (2) that this injury was accidental; (3) that this injury was a producing cause of his death; and (4) that his death was not due to natural causes.

In its motion for judgment non obstante veredicto respondent contended, as it does here, that the uncontradicted evidence shows that Garcia did not die as a result of any accidental injury sustained in the course of his employment and that petitioners had wholly failed to prove that he died of any such injury. The basis of this contention is, first, that he did not

die of any injuries at all but of epilepsy; second, if he did die of personal injuries they were sustained in a fall caused by epilepsy and therefore did not arise out of his employment.

Although a doctor who performed an autopsy on Garcia's body testified that in his opinion Garcia died of an epileptic seizure and the testimony otherwise sharply conflicted as to whether Garcia received any injury which was calculated to produce death, there was ample evidence that in falling he suffered a fracture of his left temple, which another doctor testified would "in all reasonable probability" have caused his death; so we are obliged to accept the jury's finding that an accidental injury sustained in his fall was a producing cause of his death. Moreover, in spite of an entire absence of any evidence that Garcia had ever suffered from epilepsy, we are going to assume that he fell while in an epileptic fit. So the precise question for decision is: Since Garcia's fall was due to his epilepsy did his injury arise out of his employment? In other words, was there a casual connection between the conditions under which his work was required to be performed and his resulting injury, under Art. 8309, V. A. C. S., as construed in cases like Safety Casualty Co. v. Wright, 138 Texas, 492, 160 S. W. (2d) 238?

As this question has never been decided in Texas, we have looked to the decisions in other jurisdictions for the answer.

Eighteen American jurisdictions allow recovery under circumstances parallel to those in this case, while only three deny it. Illustrative cases for the affirmative are: Varao's Case (Mass.), 55 N. E. (2d), 451, Dow's Case, 231 Mass., 348, 121 N. E., 19, Cusick's Case (Mass.), 157 N. E., 596; Rockford Hotel Co. v. Industrial Com. et al, 300 Ill., 87, 132 N. E. 759; Erwin v. Industrial Com. et al, 364 Ill., 56, 4 N. E. (2d), 22; Van Watermeullen v. Indus. Com. et al, 343 Ill., 73, 174 N. E., 846; Baltimore Towage & Light Co. et al v. Shenton (Md.), 199 Atl. 806; Barlau v. Minneapolis-Moline Pow. Imp. Co. (Minn.), 9 N. W. (2d), 6; Stenberg v. Raymond Co-Op. Cream. Co. et al (Minn.), 296 N. W., 498; Reynolds v. Passaic Valley Sewerage Com'rs., 130 N. J. L., 437, 33 At. (2d) 595; Savage v. St. Aeden's Church et al (Conn.), 189 At., 599; Gonier v. Chase Companies, 97 Conn., 46, 115 At., 677; Protectu Awning Shutter Co. et al v. Cline (Fla.), 16 So. (2d) 342; Rewis v. New York Life Ins. Co. et al, 226 N. C., 325; 38 S. E., (2d) 97; Christensen v. Dysert et al, 42 N. M., 107, 76 Pac. (2d), 1; U. S. Cas. v. Richardson (Ga.), 43 S. E. (2d), 793; Miller et al, v. Beil et al, 75 Ind. App. 13, 129 N. E., 493; Board of Com'rs.

of Greene Co. v. Shertzer et al (Ind. App.), 127 N. E., 843; Indus. Com. of Ohio v. Nelson, 127 Ohio St., 41, 186 N. E., 735; Eastman Co. et al v. Indus. Acc. Com. et al (Cal.), 200 Pac., 17; Natl. Auto & Cas. Ins. Co. v. Indus. Acc. Com. et al, (Cal. Dist. Ct. App.), 171 Pac. (2d), 594, which declares that "the hard rule of the Brooker case (168 Pac. 126, L. R. A. 1918F) is no longer in effect in this state"; Mausert v. Albany Builders' Supply Co. et al, 250 N. Y. 21, 164 N. E., 729; Connelly v. Samaritan Hospital et al, 259 N. Y., 137, 181 N. E., 76; Carroll v. What Cheer Stables Co., 38 R. I., 421, 96 Atl., 208; New Amsterdam Cas. Co. v. Hoage, Com'r. (Ct. App. Dist. of Col.), 62 Fed., (2d), 468, cert. den., 288 U. S., 608; President and Directors of Georgetown College v. Stone et al (Ct. App. Dist. of Col.), 59 Fed., (2d), 875; Tavey v. Indus. Com. of Utah (Utah), 150 Pac. (2d), 379; and McCarthy v. General Electric Co., 293 Pa., 448, 143 At. 116.

However, the force of the holdings in Utah and Pennsylvania must be discounted because in those states it is not required that the injury arise out of the claimant's employment, it being sufficient if the injury is sustained in the course of his employment. And in Carroll v. What Cheer Stables Co., the Rhode Island case, supra, wherein the claimant became dizzy and fell from a hack, there was as much evidence that the fall was caused by an unexpected lurching of the hack as that it was due to his dizziness.

Oklahoma, Kansas and Michigan now deny compensation under circumstances like those in this case. See Marion Machane Foundry & Supply Co. et al v. Redd et al (Okla).), 241 Pac., 175; Cox v. Kansas City Refining Co. (Kan.), 195 Pac., 863, 19 A. L. R., 90; and Van Gorder v. Packard Motorcar Co. (Mich.), 162 N. W., 107. These cases see no casual connection between the injury and the employment; they assert that but for the epileptic seizure there would have been no injury.

Most of the cases cited as representing the great weight of American authority reject this argument that but for the epileptic seizure there would have been no injury, by the application of this test: "If, except for the employment, the fall, though due to a cause not related to the employment, would not have carried the consequences it did, then casual connection is established between injury and employment, and the accidental injury arose out of the employment." Connelly v. Samaritan Hospital et al, supra (259 N. Y., 137, 181 N. E., 76). To illustrate this proposition the same court said in another case: "It is

the fall and the injury resulting from it that constitutes an accident within the purview of the statute. This cause may be disregarded and the injury limited to an investigation to disclose whether the fall, having occurred, bore with it such consequences as would not have occurred except for the employment. A teamster suffering from heart disease, may sink upon a quantity of straw in the stable. He may be temporarily dazed and immediately recover, or he may die from cardiac syncope. Unless his disease was caused by his employment, his death does not arise out of his employment. Another teamster, suffering from the same disease in a form not sufficiently severe to cause him to do more than to slide from his seat to the pavement, breaks his bones or is killed. Then his injury arises out of his employment. If he had not been driving his wagon and fallen to the street, he would not have been hurt." Nausert v. Albany Builders' Supply Co. et al, supra (250 N. Y. 21, 164 N. E., 729). The Supreme Court of New Jersey has stated the proposition in these words: "The sound rule is that whenever conditions attached to the place of employment or otherwise incident to the employment are factors in the catastrophic combination, the consequent injury arises out of the employment." Reynolds v. Passaic Valley Sewerage Com'rs., supra (130 N. J. L., 437, 33 At. (2d), 595.) In President and Directors of Georgetown College v. Stone et al, supra (59 Fed. (2d), 875), the employee, while using a hot water hose to defrost ice cans, suffered an epileptic fit, during which he was so severely burned by the hot water that he died. The Court of Appeals of the District of Columbia said: "Those facts admit of but one lawful conclusion to wit, that the employee's death was caused by the burns and not by the epilepsy, and that the burns were inflicted by means of the instrumentalities used by the employee in the course of his employment, and therefore arose out of, as well as in the course of, the employment."

According to the undisputed testimony in the case at bar, most of which came from respondent's witness, Stevens, he and Garcia were waiting to perform their last duty of the day, to close the dock gates; just before he fell Garcia was leaning his left shoulder against the post which separated the entrances to the dock and to which some of the mechanism for operating the gates was attached, with the left side of his head just above the sharp corner made by the steel edgings placed on the post to protect it from trucks entering the dock. Since there is positive evidence that there was nothing whatever on the ground which could have caused the fracture in his left temple and an entire absence of any evidence to the contrary, there is no rea-

sonable conclusion but that his head struck this sharp corner as he fell to the ground, just as Stevens himself twice clearly intimated that he did.

Under the great weight of authority as represented by the above-cited cases as well as the better reasoning, we hold that Garcia's injuries arose out of his employment, because it had "casual connection with" his injuries, "either through its activities, its conditions or its environments." Indus. Com. v. Nelson, supra (127 Ohio St., 41, 186 N. E., 735). The post with the sharp corners, which resulted from measures taken to protect the post, was a condition attached to the place of Garcia's employment; more than that, it was an instrumentality essential to the work he was waiting to do. Since his duties required him to be near the post at that time, the danger of falling against it was a hazard to which he was exposed because of his employment; and injury and death from a crushed temple suffered when he did fall against it came to him because he was then acting in the course of his employment and under the conditions of his employment. If he had not been working he might have suffered the epileptic stroke anywhere and he might have fallen just as he did fall, but he certainly would not have fallen against this post with its sharp edges to fracture his temple and die. Burroughs Add. Mach. Co. v. Dehn (Ind. App.), 39 N. E. (2d), 499. Danger of injury from a fall at some other place might have been no less, but it certainly was not the same. See Connelly v. Samaritan Hospital et al, supra. "The rick may be no different in degree or kind than those to which he may be exposed outside of his employment. The injury is compensable, not because of the extent or particular character of the hazard, but because it exists as one of the conditions of the employment." Savage v. St. Aeden's Church, supra (189 Atl., 599). Since there is no claim that the fall was caused by any third person's intention or by Garcia's intoxication, we must hold that the cause of his fall is immaterial.

Under the circumstances stated, it follows that since the fall resulted in an injury which was in turn a producing cause of his death, his death is compensable, although the fall may have been due to a pre-existing idiopathic condition. As said by the Supreme Judicial Court of Massachusetts, in Cusick's Case, supra (157 N. E., 596) : "The fact that he suffered from epilepsy does not bar a recovery. The protection of the statute is not limited to employees who are in good health * * * It (previous condition of health) has no more to do with it than his lack of ordinary care or the employer's freedom from

simple negligence. * * * It is the injury arising out of the employment and not out of disease of the employee for which compensation is to be paid. Yet it is the hazard of the employment acting upon the particular employee in his condition of health and not what the hazard would be if acting upon a healthy employee or upon the average employee. The act makes no distinction between wise or foolish, skilled or inexperienced, healthy or diseased employees. All who rightly are describable as employees come within the act." See also Barlau v. Minneapolis-Moline Pow. Imp. Co., supra (9 N. W. (2d), 6).

The trial court erred in granting respondent's motion for judgment non obstante veredicto. He should have granted petitioners' motion for judgment on the verdict.

Accordingly, both judgments below are reversed and the cause is remanded to the trial court with instructions to enter judgment for petitioners upon the verdict of the jury. See Reid v. Associated Employers Lloyds (Civ. App.), 164 S. W. (2d), 584 (er. ref.).

Opinion delivered March 10, 1948.

No motion for rehearing filed.