**TEXAS EMPLOYERS' INS. ASS'N v. MINCEY.**

**No. 2979.**

Court of Civil Appeals of Texas. Eastland.
Jan. 23, 1953.

Rehearing Denied Feb. 20, 1953.

Nelson, Montgomery, Robertson & Sellers, Wichita Falls, for appellant.

Scarborough, Yates, Scarborough & Black, Abilene, and J. C. Patterson, Benjamin, for appellee.

GRISSOM, Chief Justice.

This is a workmen's compensation case. The employee recovered judgment for 260 weeks total incapacity and the insurance carrier has appealed.

Appellant's first point is that the court erred in failing to submit to the jury an issue as to the "beginning date" of claimant's disability. We think such failure did not constitute reversible error. The jury found that the duration of claimant's total incapacity to labor was 260 weeks. In the first place, there was no dispute of the fact that the claimant's incapacity began on September 9, 1951, when he was found unconscious by the derrick floor and carried to the hospital. There was a serious dispute as to whether claimant was injured, but the real question in dispute was whether his incapacity, which began on the night following the alleged injury, was caused by slipping and falling on a derrick floor and striking his head on a piece of iron or by a mental condition not connected with the alleged injury. A jury could have found that he did not fall and strike his head and that he did not sustain an injury, but it is undisputed that on September 9th he was not able to work. This is not disputed by appellant's medical witnesses. There is convincing evidence that disability continued from the day following the alleged injury, September 9, 1951, until December 23, 1951, but since only the "beginning date" of incapacity is here in question, whether it is conclusively shown that incapacity continued for such period need not be decided.

The substance of the testimony of appellant's medical witnesses, who saw the claimant and observed, examined or treated him between September 9 and December 23, 1951, was that he was taken to the Knox City Hospital at three o'clock in the morning of September 9th, by his fellow employees on a drilling rig when they found him unconscious in the mud, just off the derrick floor, on the night following the day of his alleged injury. He was observed there by a doctor and then taken by his co-workers to the home of a friend. He returned to the same hospital and was observed by the same doctor and another on the following night and stayed there three or four days; then he left the hospital but came back four days later and stayed overnight. Said doctors treated him with sedatives. The first doctor who saw claimant said he did not consider himself qualified to make a diagnosis of claimant's nervous system and sent him to a "neurosurgeon," "a brain specialist, with emphasis on surgery of the brain," at Dallas. Claimant told the "neuro-surgeon" that he "blacked out at the rig." The first doctor again saw claimant for the same complaint about September 25th; he thought claimant's trouble "was something of a psychiatric nature." The second doctor who saw claimant at said hospital on September 26th, prescribed a dilantin drug, "which controls certain types of seizures." Claimant returned to see this second doctor on September 29th, "when he was said not to have improved." This doctor was asked by appellant's counsel whether claimant's condition improved "any during that time last fall you have been talking about?" He answered:

"Well, it would improve from—from one hospital admission to another he would feel all right, maybe this morning, and he would be dismissed and maybe he would the next night or

the next he would come back to the hospital one morning following another spell."

About October 2nd, he entered a hospital in Abilene where he stayed for some time and was then taken to Timberlawn Sanitarium in Dallas, where he stayed for more than nine weeks. He was also examined in Dallas by the "neuro-surgeon" not connected with the sanitarium on September 17, 1951. Claimant was complaining of blackout spells. This doctor reported on his examination to the first doctor he was carried to at Knox City on the night of September 9th. This specialist did say that he could not then ascertain that claimant was disabled to do manual labor but he said he would not have passed him on a preemployment examination "until the cause of his spells was determined." Months later, he was asked:

"You are not telling the jury, doctor, that this man is, at this time, not disabled?"

He answered:

"Only insofar as the history of the spells is concerned, which spells may or may not be of an organic basis."

A specialist in neurology and psychiatry saw claimant at Timberlawn Sanitarium on October 21, 1951, and treated him there until December 23rd, when claimant was discharged at the request of his family. This specialist diagnosed claimant's trouble as schizophrenia and started him on a course of insulin shock treatments, giving him ten "deep shocks." He said the treatment program was not complete but was terminated on December 23rd, at the request of claimant's family. He said that then "it was felt he had improved some but by no means fully recovered from his illness." This specialist testified:

"Q. What was the first date you saw Donald Wayne Mincey? A. October 21, 1951.

"Q. On the first date that you saw him, was he disabled to do manual labor? A. Yes.

"Q. When was the last date you saw Donald Wayne Mincey? A. During the week of December 24, 1951.

"Q. On the last date you saw Donald Wayne Mincey was he able to do manual labor? A. Yes, it was felt that the patient had not completely recovered from his mental illness, and there was a very definite possibility that he would have a recurrence of the symptoms."

* * * * * *

"Q. On the first date you saw Donald Wayne Mincey, would you have passed him on a pre-employment examination? A. No.

"Q. On the last date you saw Donald Wayne Mincey, would you have passed him on a pre-employment examination? A. Yes, with the understanding on the part of the employer of the exact nature of his illness and the possibility of a return of the symptoms."

* * * * * *

"Q. You are not telling the jury, doctor, that this man is, as this time, not disabled? A. No, I have not seen the man recently."

The doctor who testified for claimant said that his examination, on January 15, 1952, indicated claimant had suffered a brain injury; that he thought claimant was not able to do manual labor and was totally and permanently disabled. It is undisputed that claimant's incapacity began September 9, 1951, when he was found unconscious near the derrick floor and was carried to the Knox City Hospital. On this point, what caused his incapacity is not material.

█ Furthermore, we think that the "beginning date" of incapacity is not always an essential issue in a compensation case. Ordinarily, relative to this matter, it is necessary only that a finding be made as to the duration of a claimant's incapacity. See Texas Employers' Ins. Ass'n v. Shilling, Tex.Com.App., 289 S.W. 996, 998. Here, the jury found that the duration of the employee's total incapacity was 260 weeks. Usually, a finding of either the number of weeks of incapacity or the beginning and ending date thereof is a sufficient finding as to the duration of incapacity. Traders & General Ins. Co. v.

Watson, Tex.Civ.App., 131 S.W.2d 1103, 1106 (D.C.J.). Of course, under some circumstances, not applicable here, a jury finding on a disputed question as to the beginning date of incapacity would be material. This is illustrated by the decisions in Texas Employers' Ins. Ass'n v. White, Tex.Com.App., 99 S.W.2d 904, 905; Southern Underwriters v. Drewyer, Tex.Civ. App., 125 S.W.2d 640; United Employers Casualty Co. v. Oden, Tex.Civ.App., 150 S.W.2d 114, 117 (D.C.J.). The number of weeks of total incapacity for which an insurer is liable is limited by statute to 401 weeks and such period commences on the date of the injury, but the employee is not entitled to compensation until after incapacity develops, therefore, if an employee suffers an injury but does not become incapacitated until 301 weeks thereafter, he cannot recover for more than 100 weeks and, under such circumstances, the question of the beginning date of incapacity would, of course, be material. No such situation exists in this case. We think this holding does not conflict with any decision cited by appellant. Point one is overruled.

■ Point two is that the court erred in finding that claimant's incapacity began on September 9th. For the reasons stated in disposing of point one, this point is overruled.

■ Appellant's third point is that the court erred in submitting in issue number one more than one controverted issue of fact and in assuming therein that appellee was accidentally injured. Issue one was:

"Do you find from a preponderance of the evidence that on or about the 8th day of September, 1951, Donald Wayne Mincey sustained an accidental personal injury when he slipped on the wet floor of the rotary table. Answer 'Yes' or 'No.'"

Appellant's objection to said issue was that it was duplicitous and multifarious and inquired as to more than one controverted issue of fact, such issue inquiring as to four disputed issues, to wit: the date of injury, whether it was accidental, whether plaintiff sustained a personal injury and whether he slipped and fell on the rotary table. It

now contends that said issue submitted two and probably three controverted issues, to wit: "Whether the injury was accidental; whether the injury was sustained, and the method thereof," from which it concludes that the issue was multifarious and duplicitous and the objection should have been sustained. Appellant says that if the issue did nothing more it inquired as to whether appellee sustained the injury claimed by him and whether such injury was accidentally incurred and that both were ultimate issues that must be established by appellee. The word "accidental" must have been inserted in the issue by reason of appellant's objection to the charge. Its first objection was that nowhere in the charge did the court inquire of the jury whether the alleged injury was accidental. The issue did not inquire whether Mincey slipped on the table. It assumed that fact but it was not objected to for that reason. If such objection had been made the issue would probably have been changed so that it would not assume that he slipped on the table. The issue only inquired whether claimant sustained an accidental personal injury about September 8th. An issue inquiring whether Mincey sustained a personal injury on or about September 8th would not have been subject to the objection that it was duplicitous and multifarious. Eubanks v. Texas Employers' Ins. Ass'n, Tex.Sup., 246 S.W.2d 467, 468. Whether it was accidental was not an issue claimant was required to have found in his favor. It was claimant's contention that he fell on the table and injured his head, causing "blackout spells." It was appellant's contention that he sustained no injury and that his disability was caused by a mental condition. It was unnecessary for claimant to obtain a finding of an "accidental" injury. Under a comparable fact situation, we held, on October 24, 1952, in Texas Employers Insurance Association v. Agan, Tex.Civ.App., 252 S.W.2d 743, 744 that the question of accident was not an ultimate issue, nor an essential element of an ultimate issue, which a claimant was required to have found in his favor as a prerequisite to recovery of compensation. We quote therefrom as follows:

"Appellee's evidence tended to show that he suffered an injury arising out of his employment while acting in the course thereof at the time and in the manner alleged by him. Appellant attempted to prove that Agan was not struck by the bucket, in other words, that he was not injured at the time and place alleged; that he had been in several foreign hospitals and had arthritis when he was discharged from the army in 1945, and that the government had paid him for fifty percent disability, which was later reduced to twenty percent and finally to ten percent. In other words, appellant's contention on the trial, in addition to the contention that he was not injured in August, 1950, was that appellee's present incapacity, if any, was caused by, or contributed to, by a prior injury or disease, not that the alleged injury was intentional.

\* \* \* \* \* \*

"We have found no provision in our workmen's compensation statutes making the finding of an 'accident' a prerequisite to collection of compensation. Art. 8306, Sec. 1, provides that in an action for damage 'for personal injuries sustained by an employe in the course of his employment \* \* \* it shall not be a defense: 1. That the employe was guilty of contributory negligence. 2. That the injury was caused by the negligence of a fellow employe. 3. That the employe had assumed the risk of injury incident to his employment'. But, it does provide that the employer may defend such an action on the ground that the injury was caused by the 'willful intention of the employe to bring about the injury, or was so caused while the employe was in a state of intoxication.' Neither of these defenses, nor any of those set out in Art. 8309, Sec. 1, was alleged or proved.

"Art. 8309, Sec. 1, R.S.1925, provided:

"'The term "injury" or "personal injury" shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom.

"'The term "injury sustained in the course of employment," as used in this law, shall not include:

"'1. An injury caused by the act of God, unless the employe is at the time engaged in the performance of duties that subject him to a greater hazard from the act of God responsible for the injury than ordinarily applies to the general public.

"'2. An injury caused by an act of a third person intended to injure the employe because of reasons personal to him and not directed against him as an employe, or because of his employment.

"'3. An injury received while in a state of intoxication.

"'4. An injury caused by the employe's willful intention and attempt to injure himself, or to unlawfully injure some other person, but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employe while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere.'

"Said article was amended in 1943 so that it omitted only the first quoted paragraph, but the identical definition of injury and personal injury omitted was written into the 1947 amendment of Art. 8306, § 20.

"Art. 8306 § 25, was amended, 50th Leg. p. 178, Ch. 113, Sec. 7, to provide that the association should not be liable for compensation for occupational disease, unless it should be due to the nature of the employment in which the hazard of such disease actually existed and it was incurred in such employment, and not unless incapacity or death resulted within a certain time 'after the last \* \* \* exposure to such disease in such employment'.

"Sec. 20 of Art. 8306, as amended, provides:

"'Wherever the terms "injury" or "personal injury", are used in the Workmen's Compensation Law of this state, such terms shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom. Unless from the context the meaning is clearly to the contrary,

such terms shall also be construed to mean and include occupational diseases, as hereinafter defined.'

"In Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S.W. 556, our Supreme Court, in passing on the constitutionality of the workmen's compensation law, said the purpose of the act was to confine its operation to industrial accidents; that for an accidental injury an employee had a cause of action under the common law of which he could be deprived by the legislature, but that it could not deprive him of the right to redress for intentional injury because such right was guaranteed by the constitution.

"In Fidelity & Casualty Company of New York v. Ness, 5 Cir., 93 F.2d 137, 138, the court, in denying a contention that for injury to be compensable under the Texas compensation law there must be an 'accident' in the work, that is, something that caused unusual exertion or overstrain, said:

"'the statute does not require that an accident in that sense must have happened. It does not, as many such statutes do, expressly require that an accident shall have happened. It is true that the Supreme Court in Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S.W. 556, declared that the statute covered only industrial accidents, but it was in order to distinguish willful injuries, the * * * remedy for which was thought guarded by the Texas Constitution. Nothing was intended to be written into the statutory definitions.'

"It thus appears that the law provides compensation for personal injuries arising out of the employment and sustained by an employee in the course of his employment. Garcia v. Texas Indemnity Co., 146 Tex. 413, 209 S.W.2d 333, 335. But it excludes recovery for injuries caused by (1) an act of God; (2) by the act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment; (3) received while intoxicated, and (4) injuries caused by the employee's willful intention to injure himself, or another, under the circumstances stated in Art. 8309, Sec. 1, paragraphs 1, 2, 3 and 4. 'Injury sustained in the course of employment' is expressly made to include 'all other injuries of every kind and character having to do with an originating in the work, business, trade or profession of the employer received by an employe while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere.' Art. 8309, Sec. 1, Acts 1943, 48th Leg. p. 279, Ch. 176. See also Art. 8306, Sec. 1, par. 3, R.S.1925. Those stated above are the only statutory exceptions to the right of an employee to recover compensation for an injury originating in the business of his employer and sustained in the course of his employment.

"In Texas Employers' Ins. Ass'n v. Parr, Tex.Com.App., 30 S.W.2d 305, 308, the case was submitted to the jury in substantially the same manner as in this case. There was no issue submitted inquiring whether the employee suffered an 'accidental' injury. The court said:

"'In Section 1, article 8309, the term "injury sustained in the course of employment," as used in this law, means any and all injuries except the four designated in this section'.

"The four designated in said section are (1) act of God, (2) intentional injury by third person, (3) injury while intoxicated and (4) injury caused by the employee's willful intention.

"In Southwestern Surety Ins. Co. v. Owens, Tex.Civ.App., 198 S.W. 662, 664, (Writ Ref.) appellant contended the evidence failed to show the employee suffered an accidental injury in the scope of his employment, there being nothing unusual or unexpected in the circumstances in which the hemorrhage occurred which caused death. The court said:

"'The only portion of the act which designates the injuries to which the act applies as accidental is the emergency clause, which declares the aim of the act to be the protection by adequate law of the rights of employes injured in "industrial accidents" and the beneficiaries of

such employes as may be killed in such accidents. It is, we think, clear that the injuries referred to in the act are designated accidents only as contradistinguished from intention injuries'.

"The court then procceded to point out that the English workmen's compensation law and those of some states expressly provide for compensation only for injuries suffered by 'accident' but that the Texas act does not.

"In Garcia v. Texas Indemnity Ins. Co., 146 Tex. 413, 209 S.W.2d 333, 337, there was submitted an issue on accidental injury but the court did not have under consideration the question here presented. It held that a person who had an epileptic seizure while in the course of his employment and was killed by jumping against an iron post at the place of his work was entitled to compensation, although striking the post was due to the seizure. The court said:

" 'Since there is no claim that the fall was caused by any third person's intention or by Garcia's intoxication, we must hold that the cause of his fall is immaterial.

" 'Under the circumstances stated, it follows that since the fall resulted in an injury which was in turn a producing cause of his death, his death is compensable, although the fall may have been due to a pre-existing idiopathic condition.'

"In Maryland Casualty Company v. Guzman, Tex.Civ.App., 79 S.W.2d 330, the Court of Civil Appeals on motion for rehearing reversed the judgment, holding that the employee's beneficiaries were not entitled to recover in the absence of a finding that the employee's death was caused by an 'accidental' injury. The jury had found (5) that the employee, on the date alleged, received an injury in the course of his employment; (9) that his death was not due to a cause other than an injury sustained by him while engaged in the performance of his duty for his employer and (10) that his death was not due to a heart disease of long duration. Issues 9 and 10 were submitted at the request of the insurance company and it also requested the submission of issues (7) whether heart disease was the sole cause of his death and (2) whether his death was caused by an 'accidental' injury.

"The Supreme Court held that the findings mentioned were sufficient to sustain the judgment; that the insurance company was not in a position to complain of the refusal to submit requested issues 7 and 2 'more specific in terms, relating to the same question.' Whereupon, it reversed the judgment of the Court of Civil Appeals. See Guzman v. Maryland Casualty Co., 130 Tex. 62, 107 S.W.2d 356, 357.

"Of course, by pleading and introducing proof to support the defenses set out in the statutes it might become material for the jury to find whether there was an 'accidental' injury. For illustration, where the defense was that the injury was caused by the employee's willful and intentional attempt to injure himself.

"In Highway Ins. Underwriters v. Le Beau, Tex.Civ.App., 184 S.W.2d 671, 673, the Court of Civil Appeals held that the fact that the jury found the deceased sustained an injury to the physical structure of his body simultaneously with his death did not remove the necessity of a further finding that the injury was accidental in order to warrant a recovery. The insurer had expressly pleaded that death was due to natural causes and not accidental injuries. The Supreme Court held that the trial court erred in rendering judgment on an incomplete verdict. Incomplete because the jury did not answer the defensive issue pleaded by the insurance company and submitted in two issues inquiring (1) whether death was the result of natural causes and (2) whether it was caused by an accident. But, the Supreme Court said it was not necessary to submit both of said issues; that, 'In effect they submit the same defense and it should not be split up into two special issues.' Le Beau v. Highway Ins. Underwriters, 143 Tex. 589, 187 S.W.2d 73, 74. Of course, if the employee's death was caused by natural causes, not by an injury sustained in the course of his employment, his beneficiaries could not recover compensation for his death. This holding is substantially the same as the holding in the Guzman case,

/

supra. But, regardless of what the general rule should be, there was no evidence in this case giving rise to any of the statutory exceptions to liability for harm to the physical structure of the body of the employee, originating in the business of the employer and incurred in the course of his employment, from which a fact issue as to an 'accidental' injury could arise. If Agan was injured as he alleged and testified, he was entitled to compensation unless his incapacity was due solely to disease or a congenital condition, as appellant alleged. A finding that an injury was caused by an accident is not always a prerequisite to recovery of compensation. Here, there was neither pleadings nor evidence raising an issue as to whether Agan's injury, if any, on August 11, 1950, was accidental. Fidelity Union Casualty Company v. Martin, Tex.Civ.App., 45 S.W. 2d 682 (Writ Dis.)."

██ Since the question of the injury, if any, being "accidentally" sustained appears to have been inserted in the issue in response to appellant's objection and because it was surplusage and claimant was not required to establish it as an element of its cause of action, we do not think the judgment should be reversed because such element was included in the issue, thereby merely placing a more onerous burden on claimant than the law required. The only remaining question left in the issue, and the one which claimant was required to have the jury find in order to recover compensation, was whether the claimant sustained an injury on or about September 8th. This was not duplicitous. It is difficult to conceive how appellant could have been injured by the submission of this issue, except by the assumption therein by the use of the word "when" that the claimant did slip on the table. The issue was not objected to for that reason.

In Eubanks v. Texas Employers' Ins. Ass'n, Tex.Sup., 246 S.W.2d 467, 468, the fact issue was, "Do you find from a preponderance of the evidence that J. L. Eubanks sustained personal injuries during the first two weeks of January, 1945, as a result of being struck a blow on his head by a piece of timber?" It was objected to on the ground that it was duplicitous because it inquired, first, whether claimant sustained a personal injury and, second, whether the injury was caused by being struck a blow on the head by a piece of timber. The Supreme Court said that the ultimate issue was whether injury was sustained and that the manner the injury was sustained was not an ultimate issue; and inclusion of the manner of the injury in the issue did not constitute reversible error. Therefore, if the issue in this case had inquired whether Mincey, on or about September 8th, sustained a personal injury by slipping on the table, it would have clearly come within the decision in the Eubanks case. The use of the word "when" in the issue was an apparent assumption that Mincey did slip on the table. But the issue was not objected to for that reason. The issue was not subject to the objection made and could not have been harmful to appellant unless it was made so by inclusion of the word "accidental", which we have held was immaterial and merely had the effect, if any, of placing a more onerous burden on claimant than the law requires.

Under our holding in Texas Employers' Ins. Ass'n v. Rowell, Tex.Civ.App., 104 S.W.2d 613, 615, which was approved by the Supreme Court in the Eubanks case and cited in Texas Employers' Ins. Ass'n v. Clack, Tex.Civ.App., 112 S.W.2d 526, 529, affirmed 134 Tex. 151, 132 S.W.2d 399, the submission of the issue was not reversible error. In the Clack case the issue was, "Do you find, from a preponderance of the evidence, that the plaintiff, P. K. Clack, sustained any personal injuries, as alleged, by falling from a cooling tower on September 27, 1935?" The insurer there contended that said issue assumed an injury was sustained, presupposed that the claimant fell from a tower and was multifarious. In answer to said contentions, the court said:

"We think the ultimate fact sought by such issue was whether or not the plaintiff suffered any injuries; and the remainder of the issue was merely a modification or limitation on the ultimate fact sought."

The issue in the Rowell case was [104 S.W.2d 615]:

"Do you find from a preponderance of the evidence that the plaintiff, H. Rowell, on or about the 10th day of August, 1934, sustained an injury as that term is herein defined, as a result of a heat exhaustion or sunstroke?"

This court held the issue was not duplicitous, saying:

"The issue as submitted was substantially in accord with the plaintiff's pleadings. Stated differently, the issue was, in effect, Did the plaintiff sustain the injury alleged? Stated as it was it avoided the mistake of referring the jury to plaintiff's pleadings. The primary fact inquired about was the existence of the injury. The finding of the jury of any injury other than that alleged would have been immaterial and its submission might have been subject to the objection that the question did not limit the inquiry to the kind of injury alleged. Hence the propriety, if not the necessity, of limiting and confining the inquiry to the character of injury alleged. It has often been held that, where an issue is composed of several component parts, or where it is necessary to limit, describe, or modify an issue, the rule against duplicity or multifariousness is not violated. The question submitted the issue pleaded."

We are of the opinion that reversible error is not shown.

■ Appellant's fourth point is that the court erred in permitting claimant to introduce portions of the notice of injury and claim for compensation signed by claimant's father. The question arose in the following manner. Appellant introduced statements in said instruments relative to the nature of the injury, to wit: "nature of injury, as near as possible— injury to head, neck and back resulting in total and permanent disability." Appellant offered said testimony to impeach that of claimant and his father who had testified in substance that no doctor had then advised them that claimant was totally and permanently disabled. Thereupon, claimant introduced the immediately preceding statements in said instruments as to the cause of injury, to wit: "Cause of injury—Slipped and fell, injuring head, neck and back." All such testimony was introduced on the theory that it was admissible for impeachment purposes only. However, claimant now says the statements were admissible to show that claimant and his father were then contending that claimant had sustained an injury, in rebuttal to the testimony elicited by appellant to the effect that neither claimant nor his father had told any of the doctors or claimant's fellow workers that he had suffered an injury. In support thereof appellee cites Texas Employers' Ins. Ass'n v. Thames, Tex.Civ.App., 236 S.W.2d 203 (Writ Ref.), which held that statements in such instruments showing claimant then was claiming general injury was admissible, not as proof of the matters stated therein, but as proof that claimant was then claiming general injuries, in rebuttal to the insurer's testimony that claimant was not claiming general injuries at the time he was treated by insurer's doctors. We think the statements introduced as to the cause of injury being that claimant slipped and fell injuring his head, neck and back, were admissible, not as proof of the facts stated, but as proof that claimant and his father were then contending that he was injured, in rebuttal to testimony elicited by appellant to the effect that claimant and his father, in conversations with his fellow employees and his doctors did not claim his condition was caused by an injury. But, regardless of whether statements that the cause of the injury was that claimant slipped and fell injuring his head, neck and back were admissible, we do not think it constitutes reversible error because appellant had introduced statements therein that the nature of claimant's injury was that he had sustained an injury to his head, neck and back, causing total permanent disability and substantially the same evidence as to the cause of the injury had been elicited by appellant and the jury was not thereby apprised of any fact

they did not already know. Appellant had elicited evidence as to the cause of the injury in much greater detail, as shown by the following extract from the testimony:

"Q. Mr. Mincey, did you tell Dr. Bloss or anybody else at Timberlawn at any time that the boy had had an injury? A. Not outside of what he had there at that well.

"Q. Outside of being found unconscious? A. The night before—I told him the night before the boy had said he slipped and fell.

"Q. That's what I'm talking about. What did you tell with relation to that right there? A. I told the doctor that the boy said the night before he blacked out; they were working in the rain and the platform was slick; that he slipped and fell, he skidded four or five feet backwards and struck his head on some kind of an outfit.

"Q. You told the doctors at Timberlawn that? A. Yes, sir; I did, and that the next night they found him unconscious."

We conclude that reversible error is not shown. The judgment is affirmed.