**CITY OF AUSTIN, Appellant,**

v.

**Charles L. SMITH, Appellee.**

No. 18075.

Court of Civil Appeals of Texas, Fort Worth.

March 22, 1979.

Jerry L. Harris, City Atty., and Pam Reed, Asst. City Atty., Austin, for appellant.

Colbert & Berliner and Edward C. Berliner, Austin, for appellee.

## OPINION

MASSEY, Chief Justice.

Workers' compensation claim was presented by Charles L. Smith against the City of Austin, a self-insurer under Tex. Rev.Civ.Stat.Ann. art. 8306, et seq., "Workmen's Compensation Law".

Smith's claim was ultimately resolved in his suit in a District Court of Travis County. Trial was before a jury and a verdict signed by eleven of the jurors was returned, finding, in substance, the following: Smith sustained an injury on or about October 19, 1976 while in the course of his employment by City of Austin; the injury was a producing cause of total incapacity beginning November 22, 1976 and persisting until March 31, 1977; the injury was a producing cause of partial incapacity beginning April 1, 1977 to terminate April 1, 1982; his wage earning capacity during partial incapacity was and will be $94.00 per week; and medical care was reasonably required as result of the injury on or about October 19, 1976, for which he reasonably and necessarily incurred liability for payment in the amount of $1,638.05.

On this jury verdict judgment was rendered and it was signed on November 18, 1977. Judgment was for $21,684.48. Therefrom City of Austin appealed.

We affirm.

At time of Smith's alleged injury of October 19, 1976 he was a firefighter employed by the City of Austin. The injury, so called, was or resulted by reason of a "swine flu inoculation", the ingredients for which were provided by the federal government and administered by the city through its agents and employees.

While receipt of the inoculation was voluntary in that Smith was at liberty to refuse it, the jury was entitled to believe that the City desired that he receive it for its own welfare (in that greater assurance of ability of Smith to perform the duties of his employment would be provided). The record shows that Smith desired to receive it for his individual protection. Smith was a member of a crew of men stationed at the municipal airport. He was assigned the duty of transporting others of his crew by driving a municipally owned vehicle to the place in Austin where the inoculations were to be received.

The material time and events for consideration were those between the time of arrival at the place for inoculation and the time of departure therefrom after those of the crew who desired to do so had sub-

mitted to inoculation. Smith was at the place for inoculation to receive his "shot" or not, as he might choose. He chose to and did receive his "shot".

Smith was one of those individuals whose reaction to the "swine flu inoculation" was unfavorable. There is no question, and it is not in dispute, but that the presence of the vaccine in his body had a deleterious and disabling effect. For our purposes there is not a question upon whether it resulted in the periods of total incapacity and periods of subsequent partial incapacity found by the jury.

What is contested by three points of error relates to existence or non-existence of "injury" and/or "injury sustained in course and scope of employment", as applied to Smith, through the inoculation and injection of the serum into his body.

These points of error are that (a) there was no evidence of injury in scope and course of his employment; (b) or that there was insufficient evidence of such; and (c) that the jury finding that Smith sustained "injury" on or about October 19, 1976 (defined in the charge as damage or harm to the physical structure of the body and such diseases or infections as naturally result therefrom) was so contrary to the greater weight and preponderance of the evidence as to be clearly wrong.

The City's essential contention is that there did not exist the requisite causal connection between the work Smith was employed to perform with the injury he sustained. In other words the contention is that Smith failed to prove—sufficiently, in any event, to properly show (a) that the causative danger was peculiar to his particular work as distinguished from a danger to the public at large; (b) and/or that the causative danger was in any way incidental to and arisen out of Smith's relationship as an employee to his employer; (c) and/or that his "injury" originated from a risk connected with his employment and one which flowed from that source. Citing *Shelton v. Standard Insurance Company*, 389 S.W.2d 290 (Tex.1965), the City insists that Smith had the obligation to prove but

did not prove not only that he was engaged in or about the furtherance of his employer's business or affairs, but also that his injury had to do with and originated in such work.

The City appears to liken what occurred to an employer who furnishes transportation for his crew of workmen from a worksite into town to a restaurant in order that those of them who might desire to eat are thereby afforded the opportunity; and where one of them takes advantage of the opportunity and does eat—at his own expense, food of his own choice—and where as result something in that which he has chosen to eat causes him to become ill and thereby incapacitates him. It is readily seen that under the circumstance hypothesized there would not have been an injury covered by the Texas Workmen's Compensation Law.

In its brief the City seeks to support its position by certain language to be found in *Texas Employers' Ins. Ass'n v. Mitchell*, 27 S.W.2d 600 (Tex.Civ.App.—Texarkana 1930, writ dism'd). That was a case in which the finding of "injury in course of employment" was upheld. Among other reasons for so holding was that the injured employee was required to receive a vaccination for smallpox by the employer. In the opinion there was discussion of cases from other jurisdictions in which vaccinations were held not to have occasioned injuries in the course and scope of employment by a master because not ordered or in any way brought about by the employer, but instigated by a public agency in the public interest. Also discussed were cases in which infections which occurred were not in any way due to the work or the place of work.

We reject the contentions of the City of Austin and accept the theories of Smith. In other words we hold that there was evidence of injury in the scope and course of Smith's employment by the City, that it was sufficient to support the answer returned by the jury so finding, and that such finding was not so contrary to the greater weight and preponderance of the whole of the evidence in the record as to be clearly erroneous.

Prior to the occasion when Smith was inoculated his employer, City of Austin, established a city-wide priority program for the distribution of the swine flu vaccine, with a priority plan for inoculation of persons. The first priority group (after the aged and chronically ill) was a group of persons who, because of their occupations, would be critical to the community in the event of a swine flu epidemic. Included therein were the firemen of the City of Austin, one of whom was Smith.

It was the nature of Smith's duties of employment which caused his job to be classified in the priority group mentioned. Had he not been in that group he would not have been authorized to have received the vaccine as early as October 19th, the date on which he did receive it. Smith received the shot while he was on duty, at a facility owned and operated by his employer, City of Austin. There is testimony from the Mayor of the City of Austin, Jeff Friedman. In substance a part of that to which he testified was:

> There was no direct mandate saying you will have everybody line up, but it was made very clear that they were to be taken over in City vehicles and given time off from their functions, although they were still on emergency call; if something came up, they would have to leave the line. And I think the inference is pretty clear . . . from working in City government for six years . . . that when it is told, you have to do it and that it was pretty clear they wanted to have them . . . that the supervisors wanted them to have them (the inoculations).

Injury through inoculation should be covered "if there is a combination of strong urging by the employer and some element of mutual benefit . . . ." Larson, *Workmen's Compensation Law* § 27.32 (1978), "Inoculations and employment health tests". *Larson*, analyzing a New Jersey case where a smallpox inoculation was made available to all employees by the employer during a smallpox scare quotes therefrom under the section (§ 27.32) as follows:

> ". . . insofar as it aided in the prevention of smallpox within the employee group it protected the employer against possibly disastrous business consequences. . . . While his efforts were highly commendable . . . it would be unrealistic to find that they were for the exclusive benefit of the employees and not additionally designed to further a sound employer-employee relationship and safeguard the employer against the serious effects of a case of smallpox against its employees." *Saintsing v. Steinbach Company*, 1 N.J.Super. 259, 64 A.2d 99, 101 (1949).

and further cites with approval a Louisiana case where injections were given on the employer's premises by a trained nurse on the employer's staff, though the workmen were not ordered or required to take the inoculation. In that case the court said:

> "[T]he convenience of the facility and the posted notice constitute a suggestion, an invitation and urge, calculated to induce an employee to submit to the treatment who might not otherwise have done so." *Smith v. Brown Paper Mill Company*, 152 So. 700, 704 (La.Ct. of App.1934).

Three other points should be considered when analyzing the facts of the instant case to determine if Smith was in the course of his employment.

First, *Garcia v. Texas Indemnity Ins. Co.*, 146 Tex. 413, 209 S.W.2d 333 (1948), and the line of cases construing it, culminating in *Texas Employers' Ins. Ass'n v. Page*, 553 S.W.2d 98 (Tex.1977), hold that: "The risk may be no different in degree or kind than those to which he may be exposed outside of his employment. The injury is compensable, not because of the extent or particular character of the hazard, but because it exists as one of the conditions of the employment." *Garcia, supra*, at 337.

The second line of cases states that acts essential to the health, comfort and convenience of an employee while at work are incidental to his service, and injuries sustained in their performance arise out of the employment and are compensable under the

statute. *Security Mut. Casualty Co. v. Wakefield*, 108 F.2d 273 (5th Cir. 1939); *Casualty Reciprocal Exchange v. Johnson*, 148 F.2d 228 (5th Cir. 1945); *New York Casualty Co. v. Wetherell*, 193 F.2d 881 (5th Cir. 1952). The jury was entitled to conclude that Smith's willing acceptance of the inoculation was an act essential to his health, comfort and convenience undertaken while at work. The claim of Smith would be encompassed by the holdings of these cases under the findings of the jury returned in its verdict.

The third line of cases states that an employee can combine purely personal purposes with the discharge of duties as an employee without departing from the course of his employment. *Parker v. Royal Indemnity Co.*, 59 S.W.2d 243 (Tex.Civ.App.—Dallas 1933, no writ); *Southern Surety Co. v. Shook*, 44 S.W.2d 425 (Tex.Civ.App.—Eastland 1931, writ ref'd). The facts in *Shook* are especially convincing. Shook was on duty for his employer 24 hours per day maintaining an oil well in proper running order. He lived in a shack near the well. His duties did not require that he stay at the well or shack constantly, but he was free to go and come. One night Shook, while out hunting wolves with several other people, was murdered. The court wrote (p. 429):

"[S]o long as he was in a zone where he could hear the engine and was in a position where he could go to it when occasion arose, it could make no difference

whether he was sitting quietly in his shack, sleeping, eating, exercising, dancing, playing cards, or doing anything else.

.    .    .    .    .

"Shook's employment was analogous to that of a driver of a fire truck. He spends twenty-four hours per day in and around the fire station to be in readiness to go to a fire when an alarm is turned in. Could it be reasonably and justly contended that such fireman would not be in the course of his employment while playing  .  .  .  croquet or baseball on the outside within convenient distance thereof and within hearing of the gong? Surely not. .  .  ."

The evidence shows that Smith was on duty when he was inoculated; he was on call at the very time of its receipt, within hearing distance of a "walkie talkie" in communication with his work station so that he could have (and would have) responded instantly had there been an emergency at the municipal airport. At least the evidence raised the issue and in our view almost mandated the very findings which were returned by the jury.

Judgment is affirmed.