**AETNA INSURANCE COMPANY,**
**Appellant,**

**v.**

**William C. McDONALD, Jr., Appellee.**

**No. 8509.**

Court of Civil Appeals of Texas,
Amarillo.

March 24, 1975.

Smith, Waters & Holt, Bill Waters, Pampa, for appellant.

Alexander, Lowe & Pratt, Benny J. Lowe, Odessa, for appellee.

ELLIS, Chief Justice.

In this workmen's compensation case, plaintiff William C. McDonald, Jr. was awarded a judgment against defendant Aetna Insurance Company for total and permanent disability resulting from injuries suffered by reason of a fall while he was working for Advance Engineering Company on a wellsite located in Wheeler County, Texas. Affirmed.

Plaintiff, an employee of Advance Engineering Company, fell from a trailer house, hitting his head and shoulder on the steps while performing his duties as a well-log-

ger on December 12, 1971. Since the accident occurred in the evening, plaintiff waited until the next day to visit Doctor Winslow in Wheeler, Texas, who prescribed some pain pills. Plaintiff then continued his regular duties until December 26, 1971. He did not work from December 26, 1971, until the latter part of February, 1972, when he again resumed his regular duties for Advance Engineering. On April 6, 1972, plaintiff, while moving the trailer house belonging to Advance Engineering Company, overturned his pickup along with the trailer house. Since the time of the pickup accident, plaintiff has done work which required manual labor for a period of two or three days; however, he has worked part-time as a photographer.

By his petition, plaintiff alleges that total and permanent disability resulted from injuries to his body, including disabling injuries to the nerves, bones and to soft tissue of his head, neck and lower back, received while in the usual and regular employment for Advance Engineering Company on or about December 12, 1971. Defendant answered by general denial and among other items, alleged that plaintiff's disability, if any, is due solely to an accidental injury sustained by plaintiff at some time either before or after the accidental injury alleged in this suit. On the basis of the jury's answers to special issues, the trial court entered judgment in favor of the plaintiff for total and permanent disability. This appeal has been perfected from that judgment.

■ Appellant complains by one point of error that the findings of the jury of total and permanent disability not contributed to by a subsequent accident are not supported by the evidence and are contrary to and so against the great weight of the evidence as to be manifestly unjust. The basis for appellant's point of error is the assignment of errors numbers 2–7 in its motion for new trial, contending that the verdict of the jury is not supported by, and is contrary to, the evidence insofar as the

answers of the jury to certain specified special issues are concerned. Appellee vigorously asserts that such assignments of error are too general, multifarious and duplicitious for the preservation of any error; therefore, appellant has waived any complaint. We have carefully examined the grounds of error assigned within appellant's motion for new trial and conclude that although they are of a somewhat general nature, under a liberal interpretation, they do point out with sufficient particularity the parts of the proceeding to which complaint is being made. See Houston Typographical Union No. 87 v. Houston Chronicle Publishing Co., 397 S.W.2d 948 (Tex.Civ.App.—Eastland 1965, writ ref'd n. r. e.); Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478 (1943). Therefore, they are sufficient to preserve the complaint as to insufficient evidence to support the answers of the jury of total and permanent disability, not contributed to by a subsequent accident, to which appellant's point of error is directed. Further, appellant does not contend in its motion for new trial that the special issues should not have been submitted or that the answers should be disregarded as was done in Garza v. Alviar, 395 S.W.2d 821 (Tex.1965) and Torres v. Duaine, 496 S.W.2d 773 (Tex. Civ.App.—Corpus Christi 1973, no writ), which are relied upon by appellant. In those cases, grounds of error were construed as "no evidence contentions" and did not raise "factual sufficiency" questions for determination by the Court of Civil Appeals. Also, it was noted in *Garza* that, "Unless the context shows that the words were used in a different sense, references to the insufficiency of the evidence are usually construed to mean factual insufficiency."

■ Appellant's motion for new trial seeks to have the verdict of the jury and the judgment of the trial court set aside and a new trial granted on the grounds, among others, that the verdict of the jury is not supported by, and is contrary to, the evidence insofar as the answers of the jury

to certain specified special issues are concerned. There being no contentions which require the test of legal sufficiency presented, such as those involving questions as to whether the particular issue should have been submitted, or that the particular matter in question was established as a matter of law, it is our opinion that the grounds of error are to be construed as factual insufficiency complaints. See 4 R. McDonald, Texas Civil Practice in District and County Courts § 18.14–F (1971) and authorities cited therein. Therefore, appellant's point of error will be considered and all the evidence will be reviewed to determine the question of factual sufficiency to support the jury's answers to the respective special issues about which complaint is made. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

Assignments 2–7 in appellant's motion for new trial refer to the jury's answers to special issues numbers 6, 7, 8, 9, 14 and 15. The effect of such issues and the answers thereto is that: appellee was totally and permanently disabled by the injury sustained on December 12, 1971; such disability began on December 12, 1971; appellee did not suffer any temporary or partial disability; the accident of April 6, 1972 was not the sole cause of the disability; nor did the April 6, 1972 accident contribute to the disability.

Appellee testified that he and his coworker, C. E. Patteson, worked on alternate shifts and were the only employees of Advance Engineering in the area. In order to keep the operation functioning appellee returned to work the next day although he could "hardly manipulate," but he tried to "struggle on" and keep up his job with the aid of the medication prescribed by Doctor Winslow. Patteson left the jobsite shortly following appellee's fall to return to Midland for Christmas, and a temporary replacement was sent to the Wheeler County jobsite by Advance. Upon Patteson's return on December 26, 1971, appellee felt he could not continue working and returned to his home in Rankin, Texas. From the date of the accident until appellee left Wheeler County, he had seen Doctor Winslow four or five times in addition to the initial visit on the morning following the accident. Doctor Winslow x-rayed him and prescribed pain pills.

On the return to Rankin, Texas, appellee stopped in Midland, Texas, to converse with his employer who suggested that he see Doctor Driscoll. Appellee testified that Doctor Driscoll and his employer agreed that he should discontinue working for a period of time. Appellee further stated that Doctor Driscoll also prescribed pain pills, although he did not x-ray him.

Without consulting a doctor, appellee resumed his regular duties with Advance on a wellsite near Pampa, Texas, in the latter part of February, 1972. Appellee stated that he would not have been able to work without the assistance of the pain pills prescribed by Doctor Winslow and Doctor Driscoll. After completion of the job at the wellsite near Pampa, on April 6, 1972, appellee was attempting to move the trailer house with his pickup truck when the truck and trailer overturned. Appellee stated that after the accident he had a scratch on his cheek and his back was hurting "a little;" however, he did not consider his injuries to be serious. He continued his trip to Pampa, ate a steak dinner at a local restaurant and did not seek medical attention as a result of the pickup accident. He said that the next day he felt "pretty good," although sore, and he did not think he had any new injuries to his body.

During a visit with his employer immediately following the pickup accident, the employer suggested that appellee look for another job. Since that time appellee has not done any work involving manual labor with the exception of two or three days employment for Exploration Service Company. He stated that the pain was too great to continue that type of work.

Appellee testified that he had worked in the oilfields all of his working life with the exception of almost three years spent

in the air force as an aerial photographer. He further stated that he felt that he would never be able to do the type of manual labor that he was doing prior to December of 1971.

After leaving the employment of Advance on April 6, 1972, appellee saw Doctor Rios in Piedras Negras, Mexico, on one occasion, Doctor Gossett in Rankin, Texas, approximately twenty-five times and Doctor Lewis approximately ten times. Doctor Gossett and Doctor Driscoll each testified by deposition.

The deposition testimony of Doctor Gossett reflects that appellee had been a patient of his for a period of twenty years and that on June 9, 1972, he first saw appellee for this term of treatment. Appellee gave a history of having fallen from a trailer house and possibly another fall and complained of his neck. From his physical examination, he determined that there was some loss of motion of the cervical spine, and inability to turn his head to either side, or flex the cervical spine as far as would be considered normal. It was his opinion that the injury could have been caused by a fall from a trailer house. He further stated that his x-rays revealed considerable pathology in the cervical spine; a loss of intervertebral space between the third and the fourth vertebrae; considerable fusion between these vertebrae;. fusion of the articular surfaces of the second, third, and fourth transverse process; and anterior fusion of spurs between the fifth and sixth cervical vertebrae. He further stated that in his opinion the conditions were not treatable by surgical process and would cause considerable stiffness and pain in the neck; that such condition would continue to grow worse; and that he would have to be continually treated for the pain.

Doctor Gossett further stated that appellee would sustain some permanent disability, approximately 30 per cent. He also said that the loss of function of the cervical spine would definitely be detrimental to any work in the oilfield, and that it might cause him further injury as well as be painful.

Doctor Driscoll testified by deposition that he saw appellee on January 4, 1972, but did not treat him. He was given a history of having fallen from a trailer house door and that he had headaches, pain in the right shoulder, his neck was occasionally stiff and soreness and numbness in his right ring and little finger. Although Doctor Driscoll did not x-ray the appellee, he testified that from his physical examination he was unable to find any serious injury attributable to the described accident of December 12, 1971, and that appellee should be able to continue his usual occupation.

The record reflects that: Doctor Gossett's examination was subsequent to the April 6, 1972 accident and Doctor Driscoll's examination was prior to such accident; the appellee, although he suffered pain, performed some manual labor for a period after the December 12, 1971 fall prior to the April 6, 1972 pickup accident, but none afterward; the appellee stated that he did not think he had any new injuries other than temporary disability from the pickup accident; and appellee received a workmen's compensation board award for the disabilities suffered in the pickup accident. Thus, from a review of the record, it is obvious that there is conflicting evidence.

The jury as the trier of the facts is entitled to believe all, part or none of the testimony of any witness and draw its own conclusions therefrom. Ranger Insurance Company v. Kidd, 478 S.W.2d 803 (Tex.Civ.App.—Amarillo 1972, writ ref'd n. r. e.). Further, the fact that an injured employee resumes work after an injury does not preclude a finding of total, permanent disability, but merely presents a fact to be considered by the jury. Texas

Employers' Ins. Ass'n v. Evers, 242 S.W.2d 906 (Tex.Civ.App.—Amarillo 1951, writ ref'd n. r. e.); Consolidated Casualty Insurance Co. v. Baker, 297 S.W.2d 706 (Tex.Civ.App.—Waco 1956, writ ref'd n. r. e.). The jury was instructed that the term "total disability" as used in the charge "does not mean an absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman in such a way as to enable him to both procure and retain employment is totally disabled." See Texas Employers' Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000 (1944).

It is evident that the jury chose to believe that the appellee's injury was painful and that he would be unable to continue any type of manual labor which is required for employment in the type of work for which he was qualified, although he continued to work for some period following the fall and preceding the pickup accident. Appellee testified that he was only able to work with the aid of pain pills and that finally, after the attempt to work for Exploration Service Company for two or three days, he determined that he was unable to continue with this kind of work which required considerable physical movement. His testimony in this respect was corroborated by Doctor Gossett's deposition testimony to the effect that the injury was calculated to produce pain and stiffness in the neck. Further, Doctor Gossett testified that the condition would worsen and the likelihood of future injuries was increased. Frank B. Westerman, an independent oil operator, testified that he knew appellee to be a "good hand" prior to the December 12, 1971 accident, and that he would not want to hire any employee for oilfield work who was taking medication and was required to visit a doctor frequently. It is apparent also that the jury chose to disregard the deposition testimony of Doctor Driscoll to the effect that appellee's injuries were not serious and that he should continue his regular employment.

■ The jury had the prerogative of determining the credibility and weight of appellee's testimony, together with the surrounding circumstances, as to how and when he was injured. Travelers Insurance Company v. Wade, 373 S.W.2d 881 (Tex. Civ.App.—Dallas 1963, writ ref'd n. r. e.). The jury could reasonably conclude from appellee's testimony to the effect that he received no new injuries requiring medical attention in connection with the latter accident, coupled with the absence of any direct evidence which would link the April 6, 1972 accident with the December 12, 1971 disability, that the subsequent accident did not contribute to the prior disability. Any doubt as to whether the evidence supports a finding of permanent incapacity from the December 12, 1971 accident should be resolved in favor of the right of the injured workman for the compensation sought. Bailey v. American General Ins. Co., 154 Tex. 430, 279 S.W.2d 315 (1955); Hargrove v. Trinity University Ins. Co., 152 Tex. 243, 256 S.W.2d 73 (1953).

■ From our review of the entire record, and from a consideration of all the testimony, circumstances and reasonable inferences therefrom, it is our opinion that there is sufficient evidentiary support for the jury's answers, and that such findings are not so against the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, appellant's point of error is overruled and the judgment of the trial court is affirmed.