558 S.W.2d 917 (1977)
TEXAS EMPLOYERS' INSURANCE ASSOCIATION
v.
Guadalupe VILLASANA.
No. 8819.
Court of Civil Appeals of Texas, Amarillo.
November 14, 1977.
*918 Crenshaw, Dupree & Milam (Cecil Kuhne), Lubbock, for appellant.
Mark Smith & Associates (Mickey J. Blanks), Lubbock, for appellee.
REYNOLDS, Justice.
Texas Employers' Insurance Association seeks the reversal of a judgment, entered on a jury's verdict, awarding Guadalupe Villasana workers' compensation for total and permanent disability. No reversible error is presented in T.E.I.A.'s attacks on the jury's findings that Villasana was injured as the result of an accident in the course of his employment, or on the instruction to the jury concerning an injury in the course of employment, or on the admission of the medical records. Affirmed.
*919 Guadalupe Villasana was employed by Farmers' Co-op Compress in Lubbock County, where he had worked for some thirteen years, on 26 January 1973. On that afternoon, Villasana took a break as a regularly scheduled occurrence. He went to the foreman's office, had a drink of water and sat down to smoke a cigarette. Other employees were in the foreman's office during the break, but testimony at the trial varied with respect to what transpired.
Villasana testified that he was seated in the foreman's chair which had rollers on it. When he stood at the sound of the whistle ending the break, his foot, which was on top of one of the rollers, slipped off, and the chair rolled backward. Losing his balance, Villasana struck his head on the corner of a cabinet, producing a little bump over his right eye. Villasana acknowledged that he had to have become unconscious because the next thing he remembered was sitting in a chair on the dock when an ambulance arrived.
Francisco Sanchez, a co-worker of Villasana, was in the office during the break. His testimony was that Villasana did not fall during his presence, but as he (Sanchez) was stepping outside the office, Villasana, who he saw on the floor, was taken from the office to the dock and the ambulance arrived.
The foreman, George Thomas, whose presence in the office at the time Villasana said he fell was disputed by both Villasana and Sanchez, testified that Villasana was seated on the floor, and that there was no sound of a person falling or a chair being pushed. Thomas said that he saw Villasana lying on the office floor, "his eyes was walling around in his head" and "he was trying to swallow his tongue." Upon close observation, Thomas saw no sign of an injury. Thomas took Villasana to the dock and called an ambulance.
Villasana refused to leave in the ambulance. Rex McKinney, the compress manager, looked for but saw no evidence of an injury and took Villasana home, directing him to go to University Hospital and to see Dr. Knoerr. When Villasana arrived home, Mrs. Villasana said she saw the little bump on his right eye and, because Villasana could not stand the pain, she took him to the hospital.
Villasana returned to work the next morning. Several days later in the foreman's office just before going to work, he "passed out" and fell, suffering a big knot around his right eye. Thomas again noticed Villasana's eyes "walling around in his head" and that "he was trying to bite or swallow his tongue." Villasana was taken to the hospital and was seen by Dr. Knoerr.
With some absences because of pain, Villasana worked through the cotton season. His work on another job was interrupted for hospitalization. He worked at the compress the following season, but has not worked since. He accounted for the hospitalizations he could remember and described his physical impairments, including double vision, blindness in his right eye, deafness, and loss of smell, taste and strength.
Medical evidence from Dr. William Gordon was introduced through his deposition, his answers to written interrogatories, and his medical records, to which were attached medical records made by third parties, pertaining to Villasana. Dr. Gordon first saw Villasana on 14 May 1973. Villasana told the doctor about two falls at the compress. Villasana's history included the drinking of Ethanol, a type of alcohol, which, Dr. Gordon said, can bring on convulsive seizures. The doctor admitted that when he initially examined Villasana, he felt Villasana might have had grand mal epilepsy, which would be consistent with Villasana's passing out and sight problems. After examinations and tests, it was Dr. Gordon's opinion that, although the date he originally received was not 26 January 1973, it would suffice, and the described blow to the frontal region could have, within reasonable medical probability, caused Villasana's physical impairment. Etiology furnished no conclusive diagnosis for Villasana's complaints, but it *920 was Dr. Gordon's opinion that Villasana suffered physical impairment as a result of the injury. Dr. Gordon concluded, after consultation with other physicians, that the physical findings could be adequately explained on the basis of trauma setting the events in motion.
In answering the first three special issues, the jury found that: Villasana received an injury on or about 26 January 1973; the injury was the result of an accident; and the injury occurred in the course of employment. These findings are attacked in T.E.I.A.'s first six points of error on the grounds of no evidence and factually insufficient evidence.
Testing the efficacy of the "no evidence" points, we have considered the evidence favorable to the answers to the respective issues and have disregarded all evidence which is adverse to the favorable findings. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 613 (1950). Gauging the validity of the factually insufficient evidence points, we have considered and weighed all of the evidence, both supporting and contrary to the verdict. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). In doing so, we considered Dr. Gordon's testimony, to which T.E.I.A. objected for the reason that it was not based on reasonable medical probability, only after our review of it revealed that its substance established a reasonable probability of causal connection between Villasana's 26 January 1973 injury and his present physical condition. See Western Casualty and Surety Company v. Gonzales, 518 S.W.2d 524, 526 (Tex.1975).
While there is no fixed rule of evidence by which Villasana had to establish the fact of his injury, Select Insurance Company v. Patton, 506 S.W.2d 677, 682 (Tex.Civ.App.Amarillo 1974, writ ref'd n. r. e.), he had to come forward with competent evidence which, together with the surrounding circumstances, persuaded the jury that he was injured. Cf. Aetna Insurance Company v. McDonald, 520 S.W.2d 945, 950 (Tex.Civ.App.Amarillo 1975, no writ); Travelers Insurance Company v. Wade, 373 S.W.2d 881, 885 (Tex.Civ.App.Dallas 1963, writ ref'd n. r. e.). In order to show that his injury was accidental, Villasana was required to produce sufficient proof of an undesigned untoward event traceable to a definite time, place and cause. Olson v. Hartford Accident and Indemnity Company, 477 S.W.2d 859 (Tex.1972). To establish that his accidental injury occurred in the course of his employment, Villasana could show that the injury arose out of, and was causally connected with, his employment, either through its activities, its conditions, or its environments, Garcia v. Texas Indemnity Ins. Co., 146 Tex. 413, 209 S.W.2d 333, 336 (1948), which may include an act of a personal nature that, if reasonably done for his health and comfort, was incidental to his service and, thereby, arose out of his employment. Insurance Company of North America v. Estep, 501 S.W.2d 352, 354 (Tex. Civ.App.Amarillo 1973, writ ref'd n. r. e.).
Considering only the evidence favorable to the jury's findings, we find there is some evidence of probative force to support the findings that Villasana proved the disputed elements of his cause of action. In considering the factual sufficiency of the evidence, we are cognizant that it was for the jury, as the finder of facts and privileged to believe all or part or none of the testimony of any one witness, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve the conflicts and inconsistencies in the testimony. Taylor v. Lewis, 553 S.W.2d 153, 161 (Tex.Civ.App.Amarillo 1977, writ ref'd n. r. e.). After considering all of the evidence with due regard for the jury's role, we cannot say that the evidence to support the findings is so weak, or the contrary evidence is so overwhelming, that the findings should be set aside. Accordingly, T.E. I.A.'s first six points are overruled.
The subject of T.E.I.A.'s seventh point is the trial court's jury instruction reading:
*921 You are instructed that an employee may in the course of his employment do any act of a personal nature reasonably necessary to his health and comfort and an injury sustained in the performance thereof is sustained in the course and scope of employment.
You are further instructed that an employee may have an accidental injury due to a cause not related to his employment, but if the injury would not have occurred except for the performance of his employment, then such an injury is sustained in the course and scope of employment.
The instruction was designed to furnish the jury guidance in determining whether, under the peculiar circumstances, Villasana's injury, if any, was sustained in the course of his employment. The first paragraph is a paraphrasing of the principle followed in Insurance Company of North America v. Estep, supra, at 354, and the second paragraph follows the test used in Garcia v. Texas Indemnity Ins. Co., supra, 209 S.W.2d at 336.
T.E.I.A.'s point merely adopts, without quoting with the specificity demanded of a point of error, the objections T.E.I.A. lodged to that portion of the court's charge, and embraces no less than five universal contentions that the instruction is incorrect, too broad, too general, is not limited to the facts of this case, and is incomplete. By advancing more than one specific ground of error involving more than one legal question, the point is multifarious and, usually, would not be entitled to consideration. American Biomedical Corporation v. Anderson, 546 S.W.2d 112, 115 (Tex.Civ.App.Amarillo 1977, no writ).
Notwithstanding, we have looked to the accompanying argument to determine if it centers around a single legal question. T.E. I.A. argues, from the view of the evidence it unsuccessfully urged under its first six points of error, that the "instruction is a wholly inadequate, incomplete and misleading instruction on the law" and "clearly constituted a comment on the evidence and is without any support whatsoever in the evidence." We have not been favored with the citation of any authority bearing on any of the alleged faults of the instruction. Thus, the presentation is not sufficient to direct our attention to the error T.E.I.A. relies upon with any degree of certainty, Rule 418, Texas Rules of Civil Procedure; and, absent the proper development of the specific error claimed, we are not disposed to condemn the instruction. The seventh point is overruled.
Dr. Gordon had referred Villasana to other physicians for consultation and, with the benefit of their input and his own examinations and tests, arrived at his testimonial opinions expressed through his deposition and his answers to written interrogatories. Attached to Dr. Gordon's deposition and admitted in evidence were medical records made by third parties. By its eighth, and last, point, T.E.I.A. complains of the admission of Dr. Gordon's testimony and the third party records. The complaint is two-fold: Dr. Gordon's testimony was not based upon reasonable probabilities, and the statements of history and opinions contained in the attached records of the third parties were hearsay.
We previously determined that the substance of Dr. Gordon's testimony, although sometimes stated in terms of probabilities, expressed a reasonable medical probability. Dr. Gordon's reference to Villasana's case history did not render his testimony, which clearly was not based wholly upon hearsay, inadmissible. Slaughter v. Abilene State School, 21 Sup.Ct.Jour. 35, 36 (October 26, 1977).
The medical records of the third parties were hearsay. Skillern & Sons, Inc. v. Rosen, 359 S.W.2d 298, 305 (Tex.1962). We have carefully reviewed the records to evaluate the impact of the hearsay to which specific objection was made in relation to the admissible medical evidence. From that review, we conclude that the admission *922 of the records in evidence amounted to no more than harmless error, for we are not prepared to hold that the admission was reasonably calculated to cause and probably did cause the rendition of an improper verdict. Rule 434, T.R.C.P. The last point is overruled.
The judgment is affirmed.